J. JONES, Chief Justice
Mutual of Enumelaw Insurance Company (“Enumclaw” or “Appellant”) appeals a summary judgment requiring it to pay the policy limit of $300,000 on each of two separate insurance policies for the benefit of Trent Gearhart (“Trent” or “Respondent”).[1]
On January 14, 2011, Trent was severely injured in an automobile accident caused by an underinsured motorist (“UIM”). After the accident, Trent’s parents, Ronald M. Gear-hart (“Ronald”) and Brandi L. McMahon (“Brandi”), who are divorced, each attempted to collect on their separately held auto insurance policies with Enumclaw. Each of those policies provided maximum coverage of $300,000 for accidents caused by underin-sured motorists.
Enumclaw contended that because of anti-stacking language in the policies, the total UIM benefit under the combined policies was limited to $300,000. The district court held on summary judgment that the UIM anti-staek-ing provision in each policy was invalid and, therefore, ruled that Enumclaw was obligated for the full $300,000 policy limit on both policies. Enumclaw timely appealed.
I. Factual and Procedural Background
On or around January 14, 2011, Trent Gearhart and Tina Palmer were driving in Tina’s brother’s 2010 Chevrolet Impala. Trent was in the passenger seat and Tina was driving. Tina was negligent and caused an accident. The accident left Trent with a severe brain injury, which resulted in permanent cognitive defects. It is not disputed for the purposes of this action that the damages suffered by Trent are in excess of $600,000.
There were three insurance policies that covered the accident: (1) a Farmers Insurance policy held by the owner of the Impala; (2) an auto insurance policy with Enumclaw, purchased and held by Brandi; and (3) a separate auto insurance policy with Enum-claw, purchased and held by Ronald. Trent was a beneficiary under both of the Enum-claw policies. The Enumelaw policies each provided for $300,000 in UIM coverage. UIM benefits accrue to a beneficiary in the event that the beneficiary is injured in an automobile accident where the responsible party’s auto insurance is insufficient to compensate the beneficiary for the harm suffered.
The UIM sections of both of the Enumclaw policies contained identical “Other Insurance” clauses:
If there is other applicable similar insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. If this policy and any other policy providing similar insurance apply to the accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.
The first two sentences of the clause are a pro-rata provision, the third sentence is an anti-stacking provision, and the fourth sentence is an excess provision. Respondent has thus far been paid a total of $300,000 be *666 tween the settlement with Farmers Insurance and payments made by Enumclaw.[2]
On July 3,2013, Respondent’s parents filed a complaint alleging four claims: (1) “breach of contract” for Enumclaw’s failure to pay $300,000 in UIM benefits under each of the Enumclaw policies; (2) “the tort of bad faith” for Enumclaw’s refusal to pay the amounts due under the contract and for engaging in “adjusting practices” that were “designed to deprive Plaintiffs of the benefits owed to them”; (3) “punitive damages” for Enum-claw’s “extreme deviation from reasonable standards of conduct” performed “with malice, fraud, oppression, wantonness, gross negligence and/or recklessness”; and (4) attorney fees.
Enumclaw filed a motion for summary judgment, contending that the UIM anti-stacking provision clearly and unambiguously limited Trent’s maximum entitlement to UIM benefits under the combined Enumclaw policies to $300,000. Respondent filed a competing motion for summary judgment, arguing that: (1) the mirroring excess provisions in each of the Enumclaw policies create a conflict, because each policy cannot provide coverage in “excess” of the other; (2) where “other insurance” (Other Insurance) clauses conflict, they are “rejected in toto”; (3) the UIM Other Insurance clause should be rejected in full, including the anti-stacking provision; and (4) anti-stacldng provisions are against public policy because they serve to deprive the insured of benefits that are needed to protect them from losses for which there otherwise would be no coverage.
On December 2, 2013, the district court granted Trent’s motion for summary judgment and denied Enumclaw’s. The district court opined that the excess provisions of the two policies conflicted “because, if applied strictly, each policy states that it is only excess to the other.” Accordingly, the court held the entire other insurance clause, including the UIM anti-stacking provision, must be disregarded and “each policy must be applied independently.” Enumclaw filed a timely appeal.
II.Issues on Appeal
1. Did the district court err in granting Trent’s motion for summary judgment with respect to his breach of contract claim?
2. Is Trent entitled to attorney fees on appeal?
III.Standard op Review
“On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion.” Arregui v. Gallegos-Main, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012). Summary judgment is proper when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. “Whether a provision in an insurance policy is ambiguous is a question of law over which this Court exercises free review.” Markel Int'l. Ins. Co., Ltd. v. Erekson, 153 Idaho 107, 109, 279 P.3d 93, 95 (2012).
IV.Analysis
Enumclaw asserts that the district court erred in holding the Other Insurance clause to be unenforceable because it was not relying on the excess provision “to deny its obligation to pay UIM benefits.” According to Enumclaw, the excess provision “was not and is not relevant to the facts of this case and the application of the anti-stacking provision sought to be enforced by Enumclaw.” On the other hand, Trent asserts that the anti-stacking provision is ambiguous and must be construed in his favor.
The Court agrees that the anti-stacking provision should be the focus of inquiry in this case. The district court declined to apply the anti-stacking provision after concluding that the conflicting excess provisions in the two policies required the entire Other Insurance clause to be discarded, but did not *667 directly consider the anti-stacking provision. The issue is whether the anti-stacking provision is ambiguous or, perhaps, violative of public policy.
This Court has been sensitive to the situation of insurance buyers in light of their unequal bargaining power vis-á-vis insurance carriers. “The general rule is that, because insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract must be construed most strongly against the insurer.” Arreguin v. Farmers Ins. Co. of Idaho, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008).
[Wjhen interpreting their insurance policies, we do not expect policyholders to know how most courts around the country have construed certain words or to have the knowledge of those who have spent them careers working in or with the insurance industry. “ ‘Unless contrary intent is shown, common, non-teehnical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties.’ ” Armstrong v. Farmers Ins. Co. of Idaho, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009).
Weinstein v. Prudential Prop. & Cas. Ins. Co., 149 Idaho 299, 320-21, 233 P.3d 1221, 1242-43 (2010). “A provision that seeks to exclude the insurer’s'coverage must be strictly construed in favor of the insured. ... The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage.” Id.
The language employed in the Other Insurance provision of the two Enumclaw policies is confusing to the extent of being an ineffective barrier to the coverage afforded by both policies. The provision reads:
If there is other applicable similar insurance we will pay- only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. If this policy and any other policy providing similar insurance apply to the accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.
Good luck to the average insurance buyer in deciphering the meaning of this provision. Enumclaw highlights the third sentence, providing where there is any other policy that applies to the same accident “the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy.” Does this mean that-one aggregates all of the applicable policy limits and then the total of the limits constitutes the highest limit of any one policy? While one might question the advisability of such a conclusion, it is the' conclusion that the language employed would lead a reasonable insurance buyer to reach. It is not the “clear and precise language” necessary to restrict coverage.
Enumclaw points to policy language in Erland v. Nationwide Ins. Co., 136 Idaho 131, 30 P.3d 286 (2001), which it claims is similar to its policies and was apparently approved by this Court. The cited language in Erland reads, “if more than one policy applies, total limits applicable will be considered not to exceed the highest limits amount of any one of them.” Id. at 134, 30 P.3d at 289. The language in Erland is significantly different. It does not state that the maximum limit of liability “under all the policies” shall be the highest applicable limit of liability. Rather, it says that the total limits will not exceed the highest limits of any one policy. There is no implication that the limits of all of the policies shall be aggregated in determining the limit of liability.
Enumclaw cites to Couch on Insurance to support its reading of the anti-stacking provision in its policies. However, the language in the cited section of Couch is similar to the Erland language, rather than the Enumclaw language. Couch says:
A provision in a tortfeasor’s automobile liability policy or policies, covering vehicles owned by him or her, barring stacking of benefits under policies issued to the insured by the insurer and limiting the insurer’s liability to the highest limit of liability under any one policy, if not in con *668 flict with any statute or public policy, is valid.
Steven Plitt et al„ Couoh on Insurance § 169:35 (3d ed. 2015). Again, Couch does not suggest that the limits of all the policies be combined or aggregated in determining the limit available under any one policy.
Insurers often contend that anti-stacking provisions are designed to keep insureds with multiple policies from being overcompensated for their injuries. However, that is not a concern in this ease because, as Enumclaw acknowledged in its opening brief, “Trent [Gearhart] was seriously injured in [the] accident, and it is not disputed for purposes of this action that his damages exceeded the coverages available under all policies at issue in this case.” Indeed, this case exemplifies what the Idaho Legislature intended to address in Idaho Code section 41-2502(1), dealing with uninsured and underinsured motorist coverage. As stated in Hill v. Am. Family Mut. Ins. Co., 150 Idaho 619, 625, 249 P.3d 812, 818 (2011):
Because I.C. § 41-[2502(1) ] is designed to remedy the public-safety problem created by underinsured drivers, it is a remedial statute. It is a well-known canon of statutory construction that remedial legislation is to be liberally construed to give effect to the intent of the legislature.
(citation and internal quotation marks omitted). The Hill court continued, “[t]he Legislature clearly enacted the UIM amendments to protect the citizens of this State from being undercompensated for their injuries, and exhaustion clauses impose a substantive, not merely procedural, obstacle in front of accident victims seeking UIM benefits.” Id. at 627, 249 P.3d at 820. In Hill, we declined to allow an exhaustion clause to act as a barrier to obtaining UIM benefits. Here, the barrier to full compensation is the anti-stacking provision in the Enumclaw policies.
It is difficult to see how the public policy enunciated in Hill is advanced by allowing Enumclaw to cause Trent to be undercom-pensated for his injuries by imposing the barrier of the anti-stacking provision under the circumstances of this case. It must be recalled that Trent’s parents each purchased an Enumclaw policy, each paying the required premium in order to obtain $300,000 in UIM benefits for the protection of their child. As noted above, Enumclaw concedes for purposes of this action that Trent’s damages “exceeded the coverages available under all policies at issue in this case.” If the barrier sought to be imposed by Enumclaw is allowed to be imposed, Trent will end up getting undercompensated by more than half. Thus, either his parents or perhaps the taxpayers will end up having to bear the additional costs for his medical care.
It is posited that the anti-stacking provisions must be upheld in order to make insurance affordable and available to other prospective insureds. However, it is not clear that this is particularly accurate under the circumstances of this case. Both of Trent’s parents bought Enumclaw policies that purportedly covered their child for up to $300,000 in UIM benefits in the event of an accident. If the parents had decided to purchase just one policy with a much higher UIM benefit, it is debatable that the premium would have been more than twice as much. Indeed, it is intuitive that one single policy with a substantially higher limit would have likely been less than the cost of two separate policies with lower limits. Since the record does not disclose the premium costs that might have been involved under either scenario, it is debatable as to whether or not public policy would be better served by enforcing the anti-stacking limit contended for by Enumclaw under the facts of this case. What we do know with some certainty, however, is that reversal of the district court’s judgment would result in Trent being substantially undercompensated for his injuries, even though reasonable insurance buyers would be excused if they were to conclude that two separate $300,000 UIM policies purchased by two separate purchasers would be available to cover injuries exceeding $600,000. We therefore affirm the district court’s holding, but on the ground that the actual language employed in the Enumclaw policies is confusing to the extent that it is ineffective to establish a barrier to recovery of Trent’s actual damages in the full amount *669 of the limit provided in each of the two Enumelaw policies.[3]
V. Attorney Fees
Trent has requested attorney fees on appeal pursuant to Idaho Code section 41-1839(1). That provision allows for an award of reasonable attorney fees where an insurer has failed to pay the amount justly due under an insurance policy for a period of 30 days after proof of loss has been furnished to the insurer. There is no doubt here that Enumelaw has had knowledge for quite some time of the fact that Trent’s damages exceeded the limits of both of its policies. Therefore, we award attorney fees to Trent under section 41-1839(1).
VI. Conclusion
The judgment of the district court is affirmed, although on different grounds. Trent is awarded fees and costs on appeal.
Justice BURDICK, and Justice Pro Tem KIDWELL concur.

. At the time suit was filed in this case, Trent was a minor. Therefore, the suit was filed on his behalf by his parents. Prior to the appeal in this case, Trent reached the age of majority and his parents were dismissed from the case by the district court.

. Shortly after the accident, Trent's parents settled all of Trent’s claims against Farmers Insurance for $99,000. That amount was credited against the amount owing on the Enumclaw policies and Enumclaw paid the rest.

. Where the lower court reaches the correct result on an incorrect theory, this Court will affirm the order on the correct theory. Markel Int’l. Ins. Co. Ltd. v. Erekson, 153 Idaho 107, 113, 279 P.3d 93, 103 (2012).