BEVAN, Justice.
This is a dispute regarding underinsured motorist insurance coverage. Appellant, Jennifer Eastman ("Eastman"), filed a complaint, seeking a declaratory judgment that she was entitled to underinsured motorist insurance coverage ("UIM coverage") under her auto insurance policy (the "Policy") with Respondent, Farmers Insurance Company ("Farmers"). The district court granted summary judgment in favor of Farmers, ruling that an exclusion contained in the Policy precluded UIM coverage for Eastman's injuries. Eastman appealed the district court's judgment. We vacated the district court's order granting summary judgment, vacate the judgment of the district court and remand this case for further proceedings consistent with this opinion.
I. FACTUAL AND PROCEDURAL BACKGROUND
On March 18, 2014, Eastman was involved in a motor vehicle accident while traveling in a van operated by the Spokane Transit Authority ("STA"). Eastman sustained injuries as a result of the accident. Both the at-fault driver and STA held insurance policies. Eastman collected $50,000 from the at-fault driver's insurance policy. Additionally, Eastman collected $48,846 in UIM coverage from STA's insurance policy.
Eastman's special damages from the accident (approximately $209,237.60 in medical expenses, and $8,330.56 in lost wages) exceeded the amount that she collected ($98,846) from the two insurance policies. Accordingly, on April 15, 2016, Eastman filed a claim with her insurer, Farmers, in an attempt to collect her own UIM coverage under the Policy. Specifically, Eastman sought her UIM coverage limit ($500,000) minus the $98,846 that she had already collected from the other insurance policies.
Farmers denied Eastman's claim based on an exclusion within the Policy which eliminated UIM coverage in situations where the insured was riding in another vehicle that had UIM coverage. The portion of the Policy which is relevant to this case is titled "UNDERinsured Motorist Coverage." UIM coverage under this portion is both granted and limited as follows, in pertinent part:
Coverage C-1 UNDERinsured Motorist Coverage
....
We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an UNDERinsured motor vehicle because of bodily injury sustained by the insured person .
Limits of Liability
a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of the UNDERinsured Motorist Coverage stated in this policy, and our maximum liability under the UNDERinsured Motorist Coverage is the lesser of:
1. The difference between the amount paid in damages to the insured person by and for any person or organization who may be legally liable for the bodily injury , and the limit of UNDERinsured Motorist Coverage; or
2. he amount of damages established but not recovered by any agreement, settlement, or judgment with or for *434 the person or organization legally liable for the bodily injury .
....
Other Insurance
....
3. We will not provide insurance for a vehicle other than your insured car or your insured motorcycle , unless the owner of that vehicle has no other insurance applicable to this part.
(Bold emphasis in original; italics added).
In sum, the Policy provided UIM coverage, but Farmers sought to limit that coverage pursuant to paragraph three in its Other Insurance provision outlined above because the STA van had $50,000 in UIM coverage. For ease of reference this exclusion will be referenced hereinafter as the "non-owned vehicle" exclusion.
On June 21, 2016, Eastman filed a Complaint for Declaratory Judgment. On September 1, 2016, Farmers filed a Motion for Summary Judgment. On September 30, 2016, Eastman filed her own Motion for Summary Judgment. In a memorandum in support of this motion, Eastman argued, among other things,[1] that Farmers' denial of UIM coverage based on the non-owned vehicle exclusion violated Idaho public policy.
On December 1, 2016, the district court issued a Memorandum Decision and Order on the Parties' Cross-Motions for Summary Judgment. The district court granted summary judgment in favor of Farmers, holding in part: 1) The non-owned vehicle exclusion was plain and unambiguous; 2) While riding in a vehicle other than her own, Eastman was only entitled to UIM coverage under the Policy if that vehicle had no UIM coverage; and 3) Eastman was not entitled to UIM coverage under her own Policy because STA had an insurance policy on the van which included UIM coverage. The district court recognized a public policy trend to compensate motorists for their injuries; nevertheless, the court concluded that this trend was not settled enough to invalidate the non-owned vehicle exclusion within the Policy, particularly in light of this Court's holding in Purdy v. Farmers Ins. Co. of Idaho , 138 Idaho 443, 65 P.3d 184 (2003) which found the precise clause at issue in this case was enforceable.
On December 14, 2016, Eastman filed a Motion for Reconsideration, which the district court denied on January 31, 2017. On February 3, 2017, the district court issued a Final Judgment. Eastman timely filed a notice of appeal.
II. STANDARD OF REVIEW
"On appeal from the grant of a motion for summary judgment from a declaratory judgment proceeding, this Court employs the same standard as used by the district court originally ruling on the motion." Mut. of Enumclaw Ins. Co. v. Pedersen , 133 Idaho 135, 138, 983 P.2d 208, 211 (1999). As such,
[t]he court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact the movant is entitled to judgment as a matter of law. All disputed facts must be liberally construed in favor of the nonmoving party, and all reasonable inferences from the record must be drawn in favor of the nonmoving party. Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case. This Court reviews questions of law de novo .
Farm Bureau Mut. Ins. Co. of Idaho v. Cook , 163 Idaho 455, ----, 414 P.3d 1194, 1197 (2018) (quotations and citations omitted). As noted, if the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review. See Constr. Mgmt. Sys., Inc. v. Assurance Co. of Am. , 135 Idaho 680, 682, 23 P.3d 142, 144 (2001).
*435 III. ANALYSIS
This case presents the legal question of whether Idaho's public policy, as identified in Hill v. American Family Mutual Insurance Co. , 150 Idaho 619, 249 P.3d 812 (2011), is violated by the non-owned vehicle exclusion in the Policy. We hold that it is. The principles articulated by this Court in Hill are equally valid in this case and nullify the non-owned vehicle exclusion which, much like the exhaustion clause in Hill , serve "no purpose but to dilute Idahoans' protection against underinsured drivers and to prevent insureds from collecting legitimate claims." Hill , 150 Idaho at 630, 249 P.3d at 823.
A. The public policy considerations explained in Hill control this case.
Whether an insurance contract violates public policy presents a question of law for this Court to resolve. Quiring v. Quiring , 130 Idaho 560, 566, 944 P.2d 695, 701 (1997). As pronounced by this Court in Hill :
The liberty of contract is not an absolute and unlimited right, but upon the contrary is always subservient to the public welfare. [T]he courts will not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way . The usual test applied by courts in determining whether a contract offends public policy and is antagonistic to the public interest is whether the contract has a tendency toward such an evil. Public policy may be found and set forth in the statutes, judicial decisions or the constitution. Whether an insurance contract is against public policy is to be determined from all the facts and circumstances of each case. In addition, analogous cases involving the same general principles may be looked to by the court in arriving at a satisfactory conclusion.
150 Idaho at 623, 249 P.3d at 816 (some emphasis added) (quotations and citations omitted). This analytical framework underpins our decision in this case.
1. The public policy regarding limitations on underinsured motorist coverage has already been clarified by this Court.
This Court's decision in Hill analyzed the public policy reflected in the Legislature's amendment of Idaho Code section 41-2502(1) in 2008. Id . at 623-25, 249 P.3d at 816-18. Section 41-2502(1) requires insurance companies, unless refused by an insured, to provide UIM coverage to compensate an insured against losses for which there would otherwise be inadequate coverage. The public policy footings of this law are two-fold: First, UIM coverage is to protect against "the threat that underinsured motorists pose to public safety," and second, insuring UIM coverage for an insured's claims up to her policy limits avoids the absurd result where "Idahoans injured by a totally uninsured driver [would] sometimes recover more than those injured by underinsured drivers." Id . at 624, 249 P.3d at 817.
This Court further explained in Hill that benefits from UIM coverage should be "scrupulously guarded ." Id . at 626, 249 P.3d at 819 (emphasis added). One purpose for carefully guarding such benefits is "because 'UIM coverage is intended to provide excess coverage to compensate an insured against losses for which there would otherwise be no coverage.' " Id . (quoting Horace Mann Ins. Co. v. Adkins , 215 W. Va. 297, 302-03, 599 S.E.2d 720, 725-26 (2004) ). Further, Idaho's UIM statute is a remedial one, which must be " 'liberally construed to give effect to the intent of the [L]egislature.' " Id . (quoting State v. Hobby Horse Ranch Tractor & Equip. Co. , 129 Idaho 565, 567, 929 P.2d 741, 743 (1996) ; cf. Abbie Uriguen Oldsmobile Buick, Inc. v. U.S. Fire Ins. Co. , 95 Idaho 501, 507, 511 P.2d 783, 789 (1973) ) ("The law is clear in Idaho that insurance policies are to be construed most liberally in favor of recovery.").
Applying these principles from Hill to the facts of this case, the threat to public safety from underinsured motorists remains, whether one is riding in her insured vehicle or not. Moreover, our obligation to "scrupulously guard" those benefits requires that we revisit precedent from this Court announced in 2003, years before Idaho's public policy regarding these benefits was made clear. Beyond that, an absurd result would ensue if an insured would recover more from an uninsured motorist than from a driver who carries *436 inadequate insurance. In this case, if the Farmers' non-owned vehicle exclusion were to apply, it is undisputable that Eastman would have been better off to have been injured by an uninsured driver. Her uninsured motorist coverage would have provided her up to $500,000 in coverage, whereas her underinsured motorist "coverage" provided nothing because she was injured while riding in public transportation that carried nominal limits for a public conveyance. These considerations compel the result that this Court now delineates: a result which would otherwise leave in place the dangers of underinsured motorists and lead to an absurd result that is not in line with Hill is disallowed.
2. Provisions which harm the public in some way are to be struck down.
Contracts which violate public policy "in some way" should be invalidated. Hill , 150 Idaho at 623, 249 P.3d at 816. "[W]henever [an insurance policy] appear[s void] at any stage of the case, it becomes the duty of a court to refuse to enforce it." Stearns v. Williams , 72 Idaho 276, 290, 240 P.2d 833, 842 (1952). The exclusion here eviscerates Eastman's underinsured motorist coverage based solely on what vehicle she happened to be riding in when injured. Such a result is clearly harmful "in some way" and is particularly contrary to the policies behind section 41-2502(1). See Horace Mann , 215 W. Va. at 303, 599 S.E.2d at 726 ("[U]nderinsurance coverage ... is in the nature of excess coverage. It is not intended to be liability insurance.") (quoting Castle v. Williamson , 192 W. Va 641, 647, 453 S.E.2d 624, 630 (1994) ). This is particularly compelling here, where Eastman was injured while riding in public transportation which had nominal underinsured motor vehicle coverage.
"Idaho's UIM mandate was designed to protect the public from underinsured motorists, and not merely to govern private relations between parties. The Legislature has required that insurers offer UIM coverage to all motorists. ..." Hill , 150 Idaho at 630, 249 P.3d at 823. Such public policy is thwarted when it can be jettisoned depending simply upon what vehicle an insured happens to be riding in while injured. Thus, Farmers' non-owned vehicle exclusion vitiates Idahoans' protection against underinsured drivers and prevents such insureds from collecting legitimate claims.
3. Whether the exclusion clause is antagonistic to the public interest is based on whether the clause has a tendency to that end.
The Farmers' non-owned vehicle exclusion is antagonistic to public policy because it has a tendency to injure the public in some way. Hill , 150 Idaho at 623, 249 P.3d at 816 (The test to determine if "a contract offends public policy and is antagonistic to the public interest is whether the contract has a tendency toward [injuring the public in some way.]") (quoting Stearns , 72 Idaho at 283, 240 P.2d at 837 ). The word "tendency" means "a direction or course toward a place, object, effect, or result." Webster's Third International Dictionary 2354 (Unabridged 3d ed. 1969). The exclusion which Farmers seeks to enforce has a tendency to annul the very underinsured motorist coverage which Eastman purchased. Such a tendency makes the exclusion void.
Idaho law requires that insurance companies offer UIM coverage with at least the minimum limits required by Idaho Code section 49-117 in all Idaho auto insurance policies. I.C. § 41-2502(1). That statutory limit is only $25,000. But here, Eastman sought and purchased twenty times more coverage than the minimum-in the amount of $500,000. She bought and paid for insurance to cover significant injuries like those she suffered in this case. To say that the exclusion must be enforced simply because it is unambiguous violates the very public policy articulated in Hill . Eastman paid an additional premium to obtain additional UIM coverage. She paid more than required for minimum limits coverage to protect against a scenario just like the one before the Court. Underinsured motorist coverage is specifically designed to compensate the insured when the tortfeasor's coverage does not provide sufficient compensation to the insured victim. To repeat, this time with emphasis: "The Legislature clearly enacted the UIM amendments to protect the citizens of this State from being undercom pensated for their injuries *437 ...." Hill , 150 Idaho at 627, 249 P.3d at 820.
The dissent references "heartbreaking situations" like the one before the Court that cannot be protected-against and that "motorists will inevitably suffer serious injuries for which they are undercompensated." While that result is likely true in cases where tortfeasors have minimal limits and motorists have no UIM coverage or little UIM coverage, it is not a result the law should tolerate when the injured person has purchased substantial UIM coverage but has the misfortune of being injured while riding in a public van. The sad reality is that Eastman would have been better off if STA had no UIM coverage. Such a result is contrary to the policy of "protect[ing] the citizens of this State from being undercompensated. ..." Id . In cases like this one, where Eastman purchased significant UIM coverage, she should not be blatantly undercompensated when Idaho's public policy is to the contrary.
Enforcing the non-owned vehicle exclusion " 'would [have a tendency to] emasculate the endorsement's intended effect ... to provide coverage over and above the limits of the tortfeasor's insurance.' " Id. at 626, 249 P.3d at 819 (quoting Colonial Penn Ins. Co. v. Salti , 84 A.D.2d 350, 446 N.Y.S.2d 77, 79 (N.Y. App. Div. 1982) ). Thus, the exclusion's tendency to undermine the very purpose behind UIM coverage makes it void as against public policy.
4. Analogous cases involving the same general principles support a finding that the non-owned vehicle exclusion violates public policy.
Our holding is consistent with the conclusions of other jurisdictions that have struck down Farmers' non-owned vehicle exclusion on grounds of public policy. See , e.g. , Kline v. Farmers Ins. Exch. , 277 Neb. 874, 766 N.W.2d 118 (2009) ; Illinois Farmers Ins. Co. v. Cisco , 178 Ill. 2d 386, 227 Ill.Dec. 325, 687 N.E.2d 807 (1997) ; Estate of Sinn by Sinn v. Mid-Century Ins. Co. , 288 Ill. App. 3d 193, 223 Ill.Dec. 419, 679 N.E.2d 870 (1997) ; Veach v. Farmers Ins. Co. , 460 N.W.2d 845 (Iowa 1990).
In Veach v. Farmers Ins. Co. , for example, the Iowa Supreme Court analyzed an exclusion nearly identical to the non-owned vehicle exclusion in this case, which made UIM coverage dependent on the vehicle rather than the injuries suffered by the insured. The Veach court observed that an insured often does not have any control over the insurance coverage of the vehicle in which she is riding, meaning "the insured's underinsured motorist coverage may change each time the insured enters a different vehicle." 460 N.W.2d at 847. Like we recognized in Hill , the Veach court also noted that when non-owned vehicle exclusions are enforced, "the insureds are often better covered in a vehicle with no underinsured motorist coverage than in one with the statutory minimum." Id. at 848.
If Farmers' non-owned vehicle exclusion were enforced, then we would uphold an additional absurd result where Eastman's coverage changed because she rode in a public conveyance which carried total UIM limits just over 10% of the amount she contracted for in her own efforts to insure against just this kind of risk. Her damages clearly eclipsed the amount of insurance available to her, but her coverage for such under insurance would be worthless because she was not in her own car when she was injured. Taken to its extreme, if she were riding in a friend's vehicle with minimum limits coverage when injured, her underinsurance would be entirely obliterated. Thus, "enforcement of the 'not-owned-but-insured' clause would frustrate the purpose of underinsured motorist coverage." Id . at 848.
Likewise, in Kline v. Farmers Insurance Exchange , the Nebraska[2] Supreme Court held that a Farmers' exclusion denying UIM coverage when a person is injured while occupying a vehicle she does not own was void as against public policy. The court stated:
*438 As written, the not-owned-but-insured exclusion would prevent a victim from recovering UIM benefits even in a situation where the victim has only received UIM benefits in the minimum amount of $25,000. And, under the exclusion an insured would be more adequately protected from tort-feasors in a vehicle with no UIM coverage. This is clearly not what the Legislature intended when it enacted the [Underinsured Motorist Coverage Act].
277 Neb. at 882, 766 N.W.2d at 125. This Court's holding in Hill established that Idaho's public policy is consistent with that of Iowa and Nebraska. Enforcing exclusions, which provide coverage if an insured is injured by an uninsured driver, but not if injured by an underinsured motorist while riding in a non-owned vehicle, would allow insurance companies to eviscerate the purpose of such coverage. Such results plainly violate public policy.
These analogous cases reach the same result that we reach today. Each court applied public policy principles already articulated by this Court; each reached the same conclusion-the exclusion clause at issue here violates Idaho's public policy.
B. Purdy v. Farmers Insurance does not control the outcome of this case.
In referencing the analogous cases set forth above this Court recognizes that Purdy v. Farmers Ins. Co. of Idaho , 138 Idaho 443, 65 P.3d 184 (2003) merits review. However, Purdy's holding was reached before Idaho's public policy regarding UIM coverage was established by the Legislature, and its holding is therefore no longer sustainable. Cf. Western Home Transp., Inc. v. Idaho Dep't of Labor , 155 Idaho 950, 953, 318 P.3d 940, 943 (2014) ("While we are cognizant of the importance stare decisis plays in the judicial process, we are not hesitant to reverse ourselves when a doctrine, a defense, or a holding in a case has proven over time to be unjust or unwise.").
The Purdy Court found that because the non-owned vehicle exclusion present here was not ambiguous, it was therefore enforceable. Whether Farmers' non-owned vehicle exclusion is ambiguous is not relevant to our public policy analysis here. The question before this Court is whether enforcing the exclusion, however clearly worded it may be, violates Idaho's public policy. This Court did not address that question when it decided Purdy at a time well before Idaho's underinsured motorist statute was amended. Purdy's holding is limited to the law as it existed in 2003.
We have recognized:
The court in the proper performance of its judicial function is required to examine its prior precedents. When precedent is examined in light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its proper function.
Stare decisis is not a confining phenomenon but rather a principle of law. And when the application of this principle will not result in justice, it is evident that the doctrine is not properly applicable.
Salinas v. Vierstra , 107 Idaho 984, 990, 695 P.2d 369, 375 (1985) (quoting Smith v. State , 93 Idaho 795, 801, 473 P.2d 937, 943 (1970) ) (emphasis added).
The precedential value of Purdy must be questioned in "light of [the] modern reality" that underinsured motorist coverage is now mandated for Idaho's driving public. In Hill , we recognized the dynamic nature of public policy: "Public policy is not static, but may change as the relevant factual situation and the thinking of the times change." 150 Idaho at 629, 249 P.3d at 822. The public policy of this State clearly changed after Purdy as evidenced by the Legislature's decision to pass mandatory UIM coverage in Idaho Code section 41-2502(1). The dissent attempts to weaken the Hill holding, indicating that the Legislature's amendment to Idaho Code section 41-2502(1) was not a "mandate" because insureds can refuse such coverage. See I.C. § 41-2502(2). A "mandate" is a "command, order or direction. ..." Black's Law Dictionary 962 (6th ed. 1990). The Legislature has clearly directed that underinsurance *439 be offered to all of Idaho's drivers, which is a mandate.
Indeed, the dissent recognizes that the exclusion at issue does violate a public policy decree set forth in Hill , but then disregards Hill's clearly established precedent by citing to the refrain of the need to avoid "improper judicial legislation." By curtailing Hill's manifest pronouncement on public policy in this case, the dissent ignores the Court's duty to refuse to enforce contract provisions which violate public policy. See Quiring , 130 Idaho at 567, 944 P.2d at 702 (quoting Stearns , 72 Idaho at 290, 240 P.2d at 842 ).
Again, public policy is not static, and relying upon the Purdy case, decided nearly a decade before this Court clearly outlined the public policy that "UIM amendments [must] protect the citizens of this State from being undercompensated for their injuries," simply hides behind yesterday's logic and fails to protect those of our citizens who have purchased underinsurance coverage to protect against the type of harm Eastman suffered here.
IV. CONCLUSION
We vacate the district court's judgment and remand this case with the direction to invalidate the insurance exclusion at issue. In so doing, we do not award attorney's fees to either party, as this case clarifies existing law and was certainly not brought frivolously or without foundation under Idaho Code section 12-121. Pursuant to Idaho Appellate Rule 40, Eastman is granted her costs on appeal as the prevailing party.
Chief Justice BURDICK and Justice BRODY concur.

Eastman also argued below, and before this Court, that the language of the Farmers policy provided coverage for her claims because it was ambiguous. We decline to reach this argument based upon our holding that the non-owned vehicle exclusion violates public policy.

Farmers rightly points out that Nebraska and Illinois have legislation mandating that UIM coverage be included in auto policies issued in those states. Idaho likewise mandates such coverage. See Hill , 150 Idaho at 630, 249 P.3d at 823 (stating the Legislature's "UIM mandate was designed to protect the public. ...") (Emphasis added). The fact that Idaho drivers can opt out of UIM coverage does not change the Legislature's mandate as recognized in Hill .