# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48018

PROGRESSIVE NORTHWEST
INSURANCE COMPANY, foreign
corporation doing business in the State of
Idaho,

    Plaintiff-Respondent,

v.

DEAN MICHAEL LAUTENSCHLAGER
and LAURA LEE LAUTENSCHLAGER,
husband and wife, and the marital
community comprised thereof,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2021 Term

Opinion Filed: June 7, 2021

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Jay P. Gaskill, District Judge.

The decision of the district court is <u>affirmed</u>.

Crary, Clark & Domanico, PS, Spokane, for Appellants. Aaron Crary argued.

Kirkpatrick & Startzel, PS, Spokane, for Respondent. Paul L. Kirkpatrick argued.

———————————————

BURDICK, Justice.

This case concerns the scope of coverage under a combined single limit auto insurance policy where both policyholders were injured in the same accident with an underinsured motorist and one policyholder (the passenger) had a claim against the other for his partial responsibility for the collision.

Progressive Northwest Insurance Company ("Progressive") insured Dean and Laura Lautenschlager with a combined single limit policy of $500,000, which provided liability coverage, in addition to underinsured and uninsured motorist coverage. The Lautenschlagers were subsequently injured in a collision between their motorcycle, driven by Dean, and a van,

1

driven by an underinsured motorist. Both Dean and Laura individually recovered the policy limits of $15,000 per-person from the underinsured motorist. In addition, Laura recovered a $375,000 settlement from Progressive due to Dean's partial responsibility for the collision. Progressive then instituted this action seeking a declaration that Progressive was only responsible for an additional $95,000 in underinsured motorist benefits under the policy following the various settlements. The district court granted summary judgment in Progressive's favor, concluding that the offset provisions in the Lautenschlagers' policy did not violate Idaho public policy and that the remaining coverage from Progressive was limited to $95,000. That is to say, $500,000 less the $375,000 already paid by Progressive and the $30,000 paid by the van driver's insurer leaves a remaining $95,000 in coverage under the policy.

The Lautenschlagers appeal the district court's grant of summary judgment, arguing that the offset provisions of their insurance policy are void on public policy grounds and that the policy is ambiguous with respect to the amount of coverage offered. We affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this matter are undisputed. Dean and Laura Lautenschlager are a married couple that split their time between two homes: one in Lewiston, Idaho, and the other in Fountain Hills, Arizona. In April of 2016, the Lautenschlagers purchased a motorcycle insurance policy ("the policy") from Progressive, effective from April 29, 2016, to April 29, 2017. The Lautenschlagers owned several motorcycles covered by the policy, including a 2006 Harley Davidson which was involved in the accident at the core of this litigation.

With respect to that motorcycle, the policy's declarations page listed the following coverages: $500,000 in combined single limit coverage for liability to others for a premium of $107; $500,000 in combined single limit coverage for uninsured motorists for a premium of $151; and $500,000 in combined single limit coverage for underinsured motorists ("UIM coverage") for a premium of $71. Pertinent to this matter, Part I of the policy described the coverage, exclusions, and limits with respect to liability to others coverage and Part III detailed the same with respect to the UIM coverage.

Part I of the policy provides:

If the **declarations page**[1] shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting

---

[1] Terms in bold are defined within the policy.

2

from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

Part III contains a nearly identical paragraph, differing in only one respect by stating, "the amount shown is the most **we** will pay for the total of all **bodily injury** damages resulting from any one accident." In addition, Part III provides that Progressive may offset UIM coverage under the policy by all amounts

1. paid because of **bodily injury** by or on behalf of any person or organizations that may be legally responsible; [and]

2. paid under Part I – Liability To Others[.]

In February 2017, the Lautenschlagers sustained injuries when their 2006 Harley Davidson motorcycle, driven by Dean, collided with a minivan, driven by Glenda Mike. The Lautenschlagers had been following Mike on a rural, two-lane road in Fort McDowell, Arizona, when Mike slowed down without signaling. Dean interpreted Mike's deceleration as an invitation to pass; however, as he was overtaking Mike's van, she turned directly in front of the Lautenschlagers' motorcycle. The ensuing collision left the Lautenschlagers with substantial injuries and medical expenses in excess of $500,000.

Laura asserted claims against both Mike and Dean in Arizona to recover against them for their proportional fault for the collision.[2] Dean only asserted a claim against Mike. On July 11, 2017, Mike's insurance company settled with the Lautenschlagers for Mike's policy limits of $15,000 per person, or $30,000 total. On August 21, 2019, Progressive settled with Laura for $375,000 for Dean's proportionate fault for the collision. The Lautenschlagers subsequently made a claim against Progressive for UIM benefits under Part III of the policy.

Progressive then filed this action in Nez Perce County district court, seeking a declaration that (1) its total liability under the policy with respect to the collision was $500,000 and (2) the offsets in the policy comported with Idaho law. In other words, Progressive sought to have the district court declare that its remaining liability for the incident was $95,000, which is equal to the policy limit minus the amounts recovered from Mike and the amount paid to Laura.[3] Progressive and the Lautenschlagers filed cross motions for summary judgment. Following oral argument, the district court issued an order granting Progressive's motion for summary judgment and denying the Lautenschlagers' motion for summary judgment. The district court ruled that the

---

[2] Arizona is pure comparative fault jurisdiction. Ariz. Rev. Stat. § 12-2506(A).

[3] $500,000 – ($375,000 + $15,000 + $15,000) = $95,000

3

total available coverage for the accident was $500,000, the offsets for UIM coverage did not violate Idaho public policy, and, after applying the offsets, the total remaining coverage under the policy was $95,000. Subsequently, the district court entered a final judgment granting Progressive's claim for declaratory relief.

The Lautenschlagers timely appealed.

## II.     ISSUES ON APPEAL

1. Is the Lautenschlagers' policy ambiguous with respect to the amount of coverage provided?
2. Do the offset provisions in the Lautenschlagers' policy violate Idaho public policy?
3. Are the Lautenschlagers entitled to attorney's fees on appeal?

## III.     STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court employs the same standard as used by the district court originally ruling on the motion." *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371, 48 P.3d 1256, 1260 (2002). On review, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "[I]f the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review." *Eastman v. Farmers Ins. Co.*, 164 Idaho 10, 13, 423 P.3d 431, 434 (2018).

"Whether an insurance contract violates public policy presents a question of law for this Court to resolve." *Id.* at 14, 423 P.3d at 435 (citing *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997)). In addition, "[t]he question of whether a policy is ambiguous is a question of law over which this Court exercises free review." *McFarland v. Liberty Ins. Corp.*, 164 Idaho 611, 615, 434 P.3d 215, 219 (2019) (citation and internal quotations omitted). As neither party disputes the material facts, this case presents pure questions of law for this Court to resolve.

## IV.     ANALYSIS

The Lautenschlagers challenge three aspects of their policy. First, they contend that an offset provision allowing UIM coverage to be reduced by amounts paid by any responsible party is void as against public policy. Similarly, they argue a separate offset in the policy allowing UIM coverage to be reduced by amounts paid to third parties under the policy's liability to others section is void against public policy. Finally, they argue that the policy clearly provides $500,000 in both UIM coverage and liability to other's coverage, or is ambiguous in that regard and must be construed in their favor.

4

The district court granted summary judgment in favor of Progressive, ruling that the policy unambiguously provided $500,000 in total coverage and the offset provisions did not violate public policy. We affirm the district court on the ground that the policy clearly provides a maximum of $500,000 in total coverage, and decline to address whether the offsets violate public policy because, under the unique facts of this case, operation of the offsets would not alter the outcome.

**A. The policy unambiguously provides $500,000 in coverage for all claims relating to a single accident.**

The threshold issue in this matter is whether the policy is ambiguous as to the amount of coverage provided. If the policy provides $500,000 in coverage for all claims stemming from one incident, our analysis would be at an end because the total amount of coverage minus the amounts paid to Laura and the undisputed offset for Mike's insurance is equal to $95,000. If the provision is ambiguous, however, further discussion of the offsets would be necessary to ascertain how much UIM coverage remains available to the Lautenschlagers. We hold that the policy unambiguously provides $500,000 in coverage and affirm the district court on that ground.

This Court construes insurance contracts according to "the general rules of contract law subject to certain special canons of construction." *Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008) (quoting *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540, 66 P.3d 242, 244 (2003)). "Beginning with the plain language of the insurance policy, the first step is to determine whether or not there is an ambiguity." *McFarland v. Liberty Ins. Corp.*, 164 Idaho 611, 615, 434 P.3d 215, 219 (2019) (quotation and citation omitted). In determining if any ambiguity exists, "the Court must construe the policy 'as a whole, not by an isolated phrase.'" *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005) (quoting *Selkirk Seed Co. v. State Ins. Fund*, 135 Idaho 434, 437, 18 P.3d 956, 959 (2000)). The language of an insurance policy "is ambiguous if it is subject to conflicting but reasonable interpretations." *Id.*

If the language used is unambiguous, this Court gives effect to the plain and ordinary meaning of the words used in the policy. *Id.* at 662, 115 P.3d at 753. We do not charge policyholders with knowledge of how "courts around the country have construed certain words or [with] the knowledge of those who have spent their careers working in or with the insurance industry." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 320, 233 P.3d 1221,

1242 (2010). Rather, "[u]nless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009) (quoting *Howard v. Or. Mut. Ins. Co.*, 137 Idaho 214, 217, 46 P.3d 510, 513 (2002)). However, this Court cannot create by construction "a liability not assumed by the insurer nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Id.* (quoting *Purvis v. Progressive Cas. Ins. Co.*, 142 Idaho 213, 216, 127 P.3d 116, 119 (2005)). Yet, where an ambiguity exists, this Court adheres to the general rule that "any ambiguity . . . must be construed most strongly against the insurer." *Gearhart v. Mut. of Enumclaw Ins. Co.*, 160 Idaho 664, 667, 378 P.3d 454, 457 (2016) (quoting *Arreguin*, 145 Idaho at 461, 180 P.3d at 500).

The key question in this case is what is meant by the policy language offering $500,000 in "combined single limit" coverage. Our analysis begins with the language of the policy's declarations page. Ordinarily, the declarations page is not part of an insurance contract unless specifically referenced in the contract. *See Farmers Ins. Co. of Idaho v. Talbot*, 133 Idaho 428, 433, 987 P.2d 1043, 1048 (1999) (citing *Thompson v. Harold Thompson Trucking*, 748 P.2d 430, 433 (Kan. Ct. App. 1987)). Here, the policy expressly includes the declarations page by reference, stating "[y]our policy consists of the policy contract, your insurance application, the declarations page, and all endorsements to this policy." As such, we consider the language of the declarations page in our review of the terms of the policy. That page indicates that the policy includes $500,000 in combined single limit coverage for liability to others, uninsured motorists, and UIM. The policy itself does not contain a definition of combined single limit, so we will give that term its plain and ordinary meaning. Combined is defined, in pertinent part, as "to unite into a single number or expression." *Combine*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/combine (last visited May 4, 2021). Single is defined as "consisting of only one in number." *Single*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/single (last visited May 4, 2021). Finally, limit is defined as "something that bounds, restrains, or confines" or "the utmost extent." *Limit*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/limit (last visited May 4, 2021). Thus, the plain and ordinary meaning of "combined single limit" is a policy in which claims made under the

various coverages are united into *one* number bounded or confined by the utmost amount, for which the insurer has agreed to provide coverage.

This interpretation is confirmed by reading the other provisions of the policy that mention "combined single limit." That term appears within both Part I and Part III of the policy, which describe liability to others and UIM coverage, respectively. In each part, the following language appears: "if the declarations page shows that 'combined single limit' . . . applies, the amount shown is the most [Progressive] will pay . . . from any one accident." The policy continues, "without changing this total limit of liability we will comply with any law that requires us to provide separate limits." This language suggests, as indicated above, that each type of coverage is united under a solitary limit of total liability for each accident. Indeed, the fact that the policy clearly indicates Progressive will only supply *separate* limits if required by law confirms that, absent such provision of law, the policy has *one* aggregate limit for all the coverages provided.

The Lautenschlagers argue that they paid separate premiums for each type of coverage offered under their policy and, as a result, are entitled to up to $500,000 in benefits for *both* liability to others and UIM coverage. In other words, rather than reflecting a "combined" maximum policy limit, they maintain that the policy limits on the declarations page refer to separate coverages that may be added together. To support their position, the Lautenschlagers cite *Gearhart*. However, that case is readily distinguishable from the case at hand. In *Gearhart*, this Court considered whether anti-stacking clauses in two separate, but nearly identical insurance policies held by divorced parents prevented a full recovery of UIM benefits under both policies for injuries sustained by their child. 160 Idaho at 667, 378 P.3d at 457. We concluded that the anti-stacking provision was ambiguous and interpreted it against the insurer, holding it was an ineffective bar to recovery of UIM benefits under each policy. *Id.* In reaching our holding, we also addressed the parties' public policy arguments and questioned whether a bar to UIM recovery under both policies would be consistent with public policy when each parent purchased a policy and paid an independent premium to obtain UIM coverage. *Id.* at 668, 378 P.3d at 458.

Unlike *Gearhart*, which concerned two separate insurance policies purchased by two individuals, the Lautenschlagers purchased one policy from Progressive. The fact that they paid premiums for *access* to each type of coverage under the policy is unremarkable, even if those separate coverages are all subject to the same combined limit of liability. Moreover, to the extent

7

the Lautenschlagers rely on *Gearhart*, the central holding of that case is inapplicable here. In *Gearhart*, we took pains to clarify that our holding was based "on the ground that the actual language employed in the . . . policies is confusing to the extent that it is ineffective to establish a barrier to recovery." *Id.* at 668, 378 P.3d at 458. Having concluded that the language in the policy here is unambiguous, *Gearhart* has no bearing on the present matter because it concerns only how to interpret ambiguous insurance contracts and its limited discussion of public policy was not necessary to its holding.

To conclude, we hold the plain language of the policy clearly provides a maximum of $500,000 in coverage for any one incident, regardless of the number of claims and types of coverage invoked. Consequently, we need not consider the Lautenschlagers' public policy arguments with respect to the offsets in their policy, and do not affirm the district court on that ground. Simple arithmetic demonstrates how the Lautenschlagers could not recover any more than $95,000 for their UIM claim regardless of whether the offsets they challenge are void.

Beginning with the $500,000 limit for *all* claims made as a result of one incident, we subtract the $375,000 payment from Progressive to Laura. That $375,000 payment is a result of a claim made under the policy and thus counts against the $500,000 limit. This leaves $125,000 available for any other claims made under the policy related to the collision with Mike. To that end, the Lautenschlagers made a claim for UIM coverage. The Lautenschlagers concede that Progressive would not violate public policy by offsetting UIM benefits by the $30,000 they received from Mike's insurer. Thus, applying this unchallenged offset against the $125,000 remaining in potential UIM coverage yields $95,000 in total remaining coverage under the policy. In other words, the reduction in the Lautenschlagers' potential UIM recovery is not a function of offsetting the $375,000 payment to Laura against their UIM claim; rather, it is a byproduct of that $375,000 payment consuming a portion of the policy's total liability limit. As such, we need not address the public policy arguments with respect to the policy's offsets because voiding those provisions would not result in the Lautenschlagers recovering any more than $95,000 for their UIM claim.

To clarify, we acknowledge that the first offset challenged by the Lautenschlagers, which allows UIM benefits to be reduced by any amounts received by any responsible parties, bears a strong resemblance to the provision this Court upheld in *Wood v. Farmers Insurance Co.*, 166 Idaho 43, 46, 454 P.3d 1126, 1129 (2019). Our decision today declining to address the

Lautenschlagers' public policy argument with respect to that offset does not call into question our holding in *Wood*. Rather, "[w]hether an insurance contract is against public policy 'is to be determined from all the facts and circumstances of each case.'" *Hill v. Am. Family Mut. Ins. Co.*, 150 Idaho 619, 623, 249 P.3d 812, 816 (2011) (quoting *Foremost Ins. Co. v. Putzier*, 100 Idaho 883, 887, 606 P.2d 987, 991 (1980)). Thus, while *Wood* supplies the controlling law with respect to the challenged offset provision, the facts and circumstances of this case obviate the need for us to apply *Wood* to the provision at issue.

Similarly, the framework from *Wood* would apply to analysis of the second offset provision challenged by the Lautenschlagers, which allows Progressive to offset UIM benefits by any amounts paid under the policy's liability to other's coverage. The Lautenschlagers raise a concerning hypothetical that this offset would potentially allow Progressive to eliminate UIM coverage under the policy if it pays out the policy limit to an injured third party. Yet, we need not speculate as to how this offset may violate public policy when the facts and circumstances of this case raise no need for us to address it. As such, we reserve the question of whether a similar offset may violate public policy as applied to facts similar to the Lautenschlagers' hypothetical.

### B. The Lautenschlagers are not entitled to attorney's fees on appeal.

The Lautenschlagers have requested attorney's fees on appeal pursuant to Idaho Code section 41-1839. Progressive argues that the Lautenschlagers have neither cited nor argued the specific subsection of section 41-1839 under which they are entitled to fees. From the briefing, it appears the Lautenschlagers make their request under section 41-1839(1). That section provides:

> Any insurer issuing any policy . . . that fails to pay a person entitled thereto . . . the amount that person is justly due under such policy . . . shall in any action thereafter commenced against the insurer . . . pay such further amount as the court shall adjudge reasonable as attorney's fees . . . .

I.C. § 41-1839(1).

Progressive argues that this action is not one "commenced against the insurer" because Progressive initiated these proceedings by filing a declaratory judgment action. We need not address today whether an insurer may side-step a possible award of attorney's fees by preemptively filing a declaratory judgment action because there is a more straightforward analysis that forecloses an award of fees. That is, section 41-1839(1) applies only where an insurer has failed to pay the amount to which the insured is entitled. Having concluded that Progressive was responsible for a total of $500,000, less the payment made to Laura and the

undisputed offset for Mike's settlement, the Lautenschlagers have not been deprived of full coverage under the policy. Accordingly, even if section 41-1839 applies to a declaratory judgment action brought by an insurer, we would deny their request for attorney's fees on that basis.

## V.    CONCLUSION

The district court's summary judgment ruling is affirmed on the ground that the policy's combined single limit of $500,000 is unambiguous. The total remaining coverage for Progressive after all payments and undisputed offsets have been taken into account is $95,000. Costs on appeal are awarded to Progressive pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER **CONCUR.**