712 P.2d 550

**FARMERS INSURANCE GROUP, a corporation, Plaintiff-Respondent,**

v.

**Thomas REED and Betty Reed, husband and wife, Cindy Reed, a minor, Defendants,**

and

**Darrell James Hamilton, Jr., a minor; and Darrell Hamilton, and Karen Hamilton, husband and wife, Defendants-Appellants.**

**Thomas REED and Betty Reed, husband and wife; and Cindy Reed, a minor, Defendants-Counterclaimants,**

v.

**FARMERS INSURANCE GROUP, a corporation, Plaintiff-Counterdefendant.**

**Darrell James HAMILTON, Jr., a minor; Darrell Hamilton and Karen Hamilton, husband and wife, Defendants-Counterclaimants-Appellants,**

v.

**FARMERS INSURANCE GROUP, a corporation, Plaintiff-Counterdefendant-Respondent.**

No. 14421.

Supreme Court of Idaho.

Nov. 26, 1985.

Stipulation for Dismissal with Prejudice Withdrawn Jan. 30, 1986.

Costs and Attorney Fees Waived Jan. 30, 1986.

Larry Clyel Berry (argued), Twin Falls, Stephan C. Rice and Kim Jay Trout, Lewiston, for appellants.

Kevin F. Trainor, Twin Falls, and W. Marcus W. Nye (on rehearing only), Pocatello, for respondents.

ON REHEARING

HUNTLEY, Justice.

On October 17, 1978, Thomas and Betty Reed gave their daughter, Cindy, permission to operate the family pickup. Darrell Hamilton, Jr., and his brother, Kevin, were passengers in the pickup. Shortly before 11:00 p.m., Cindy allowed Darrell to operate the pickup. Darrell was unable to negotiate a curve, and the vehicle rolled several times. As a result of injuries sustained in this accident, Kevin Hamilton was killed. At the time of the accident, Darrell was 16 years old, and Kevin was 10.

Following the accident, Darrell and Karen Hamilton, parents of Darrell, Jr., and Kevin, filed an action naming Thomas and Betty Reed, Cindy Reed as an individual,

and their son Darrell Jr. as defendants, seeking medical and funeral expenses, and general damages occasioned by the loss of their son Kevin. The complaint alleged that Kevin's death resulted from the negligent operation of the vehicle by Darrell, Jr. It was also alleged that Cindy Reed was negligent and careless in entrusting the ¾ ton, 4-wheel drive pickup to Darrell, Jr.

We granted rehearing, primarily, because the Montana Supreme Court recently held that Montana's newly enacted compulsory insurance law (which is identical to Idaho's) invalidated an auto insurance policy's household exclusion clause. *Transamerica Insurance Co. v. Royle*, 656 P.2d 820, 824 (Mont.1983). The doctrine of parent-child immunity could have been a defense for the insurance company to avoid the statutory requirement that " '[e]very owner of a motor vehicle ... shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death ... suffered *by any person* ...' " *Transamerica*, 656 P.2d at 821 (quoting Mont. Code AM. § 61–6–301(1) (1980)) (emphasis deleted in part). The Montana court held, however, that parent-child immunity did not apply to bar automobile negligence actions between family members. *Transamerica*, 656 P.2d at 824.

The number of states allowing an intrafamily automobile negligence action now totals almost thirty. *UnahBy and Through Unah v. Martin*, 676 P.2d 1366, 1367–68 (Okla.1984). *See, Hollister, Parent-Child Immunity: A Doctrine in Search of Justification*, 50 Fordham L.Rev. 489, 528–32 (1982) [hereinafter cited as Hollister]; Since November, 1983, every state which has considered intrafamily immunity in the context of negligently caused automobile accidents and household exclusion clauses has allowed intrafamily suits in this narrow area and invalidated the exclusion clause in the insurance contract. This list includes Oregon, Wyoming, Ohio, Oklahoma and Colorado. *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585, 589–90 (Colo.1984); *Dorsey v. State Farm Mutual Automobile Insurance Co.*, 9 Ohio St.3d 27, 457 N.E.2d 1169,

1171 (1984); *Unah*, 676 P.2d at 1370; *Winn v. Gilroy* 681 P.2d 776, 784–85 (Or. 1984); *Allstate Insurance Co. v. Wyoming Insurance Department*, 672 P.2d 810, 813–14 (Wyo.1983). The statutory and public policy analysis expressed herein, and in those recent decisions, requires that this Court withdraw its prior opinion and, by this decision, reverse and remand for trial.

The history of how parent-child immunity arose in the common law of many states was extensively recounted in *Pedigo v. Rowley*, 101 Idaho 201, 610 P.2d 560 (1980), and need not be repeated here. Suffice it to say that the 1891 Mississippi decision, *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891), which established the doctrine had no basis in English common law and relied solely on perceived public policy existing in the last century. Though quickly adopted by many other states, several exceptions allowing intrafamily lawsuits were also rapidly incorporated. The common law exceptions now total at least nine, including suits (a) against the estate of another family member, (b) where the parent is acting in his business capacity, (c) where a willful or malicious tort is involved, (d) where the suit is for a partnership accounting, (e) for depletion of assets, or over a (f) contract, (g) property dispute, or (h) by a child against his parents for injuries caused by negligent operation of a motor vehicle. The last exception (now recognized in many states) allows intrafamily suits in automobile negligence actions where liability insurance is present. This final exception is fast becoming standard even in the handful of states which still have blanket intrafamily immunity. *See, Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135, 138–39 (1980); *Pedigo v. Rowley*, 101 Idaho at 202–03, 610 P.2d at 561–62; *Transamerica*, 656 P.2d at 823; *Balts v. Balts*, 273 Minn. 419, 142 N.W.2d 66, 71–72 (1966); *Hollister*, at 509–11; Note, *Pedigo v. Rowley: Parental Immunity in Idaho*, 17 Idaho L.Rev. 301, 304–06 (1981).

■ Contrary to a widespread assumption, the general doctrine of intrafamily

immunity has never been incorporated into Idaho common law. Intrafamily immunity was accepted and applied in *Pedigo only* in the explicitly narrow area of negligent parental supervision. *Pedigo*, 101 Idaho at 205, 610 P.2d at 564. However, we decline to herein broaden the scope of the doctrine in Idaho, and will not apply it to shield insurance companies in automobile negligence actions. We leave to another day the question of whether, under other circumstances, the intrafamily immunity doctrine should be expanded beyond the narrow limits established in *Pedigo*.

The relevant statute in the case at bar reads:

**49-233. Required Motor Vehicle Insurance.**—(a) Every owner of a motor vehicle ... shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered *by any person* caused by maintenance or use of a motor vehicle....

I.C. § 49-233 (1978) (emphasis added).

Farmers Insurance Company issued a policy to the Reeds, and its language tracks almost exactly the "any person" language in the statute. The company agreed:

"To pay all damages the insured becomes *legally obligated* to pay because of:

(A) bodily injury *to any person* ... arising out of the ownership maintenance or use ... of the described automobile or non-owned automobile." (Emphasis added.)

However, unlike the statute, the insurance contract contains a clause which *excludes* coverage for household members. This is in spite of the clear legislative mandate ordering coverage extended for damage, injury or death suffered "by any person." This type of exclusion in a liability insurance policy leaves completely unprotected those family members injured when another family or household member is at the wheel in a negligently caused automobile accident. Unless the defendant can show that something shields it from the statutory obligation "imposed by law" to pay damages caused by the policy holder to "any person," the household exclusion clause is flatly and unmistakably in violation of Idaho's compulsory insurance law.

Traditionally, insurance companies have been relieved from their obligation "imposed by law" to compensate by the intrafamily immunity doctrine. If there is intrafamily immunity in Idaho in the context of automobile accidents, then the household exclusion clauses are valid. If there is no intrafamily immunity shield, the household exclusion clauses are invalid statutorily and as against public policy.[1]

We will first explain why we decline to implement the immunity in this narrow area. Thereafter, we will examine whether the statute and public policy completely invalidate the exclusion clause.

Essentially, two factors support the intrafamily immunity: (1) preservation of family harmony and (2) prevention of collusion or fraud. *Pedigo*, 101 Idaho at 203, 610 P.2d at 562. It was feared that family harmony in certain areas would be disrupted because of the acrimony engendered when family members are pitted as adversaries against each other, and because a judgment might erode the family financial base. But today, the presence of mandatory automobile liability insurance completely undercuts that rationale in this area. Thus, we feel that allowing an action, and subsequent recovery to the extent of the coverage under the automobile liability insurance, will enhance rather than disrupt family harmony. The Oklahoma Supreme Court recently adopted this approach in responding to the family disharmony argument:

Disruption of domestic tranquility is much less likely where the minor child can be compensated for his losses under

---

1. This is the precise reasoning used by the Montana Supreme Court in *Transamerica* and the Wyoming Supreme Court in *Allstate* in their recent rulings on the identical question, and it provides a helpful framework in which to present the analysis of the issues involved herein.

the parent's liability coverage, which additionally eases any financial strain on the family resulting from the accident.

*Unah,* 676 P.2d at 1369. The court added:

> While the existence of liability insurance—in this case compulsory coverage—does not create liability, its presence is significant, and cannot be ignored in the determination of whether our courts should continue to deprive unemancipated minors the right enjoyed by all other individuals.

*Id. See also, Streenz v. Streenz.* 106 Ariz. 86, 471 P.2d 282 (1970).

In overturning the Idaho automobile guest statute, our analysis was similar:

> The explanation may have had validity in 1931 when the guest statute was first enacted, but today, the widespread incidence of liability insurance has destroyed the basis for the argument. Because of liability insurance, the statute [like the household exclusion clause herein] appears to result in the protection of insurance companies, not generous hosts, from lawsuits by negligently injured guests. The fact that insurance companies are the real beneficiary of the guest statute's protection is made clear by the second justification of the guest statute of prevention of collusive lawsuits which is discussed below. The guest statute cannot be reasoned to promote hospitality by protecting hosts from lawsuits by guests.

*Thompson v. Hagan,* 96 Idaho 19, 22, 523 P.2d 1365, 1368 (1974).

The second major reason advanced by insurance companies in favor of applying the intrafamily immunity doctrine is prevention of fraud or collusion. This Court disposed of that argument in *Thompson,* and in *Rogers v. Yellowstone Park Company,* 97 Idaho 14, 539 P.2d 566 (1975), when we declined to let insurance companies hide behind the interspousal immunity shield:

> Implicit in respondent's argument is that the judicial system is inadequate to safeguard against collusion in tort actions between spouses. We reject this contention, for courts in this state presently weed out fraud and collusion in other cases not involving actions between spouses.
>
> We find nothing unusual or peculiar in interspousal suits to frustrate the capability of the judicial system to avoid or anticipate such abuses.

*Id.* at 17, 539 P.2d at 569. *See also, Mutual of Enumclaw Insurance Co. v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441 (1982).

For the reasons expressed above, we decline to preclude intrafamily automobile negligence actions by judicially broadening the family immunity doctrine in Idaho. Therefore, the liability of the insurance companies to pay on their automobile liability insurance policies remains a "liability imposed by law." I.C. § 49–233 (1978).

When this Court considered the validity of household exclusion clauses in *Porter v. Farmers Insurance Company of Idaho,* 102 Idaho 132, 627 P.2d 311 (1981), I.C. § 49–233 was not controlling because that statute was not in effect at the time of the 1975 accident involved in the case. However, with the Idaho compulsory insurance statute enacted into law and applying to this action, we must compare the household exclusion clause with the statutory language. As noted earlier in this opinion, the language in the statute is in direct conflict with the household exclusion clause now present in virtually every automobile insurance policy throughout the state. When considering the same issue, and an identically-worded statute, in last year's *Transamerica* case, the Montana Supreme Court unanimously held:

> The effect of the language of the Mandatory Insurance Law requires the liability policy to protect against bodily injury and property damage to "any person." In so providing, the legislature has expressly outlawed the "household exclusion."

*Transamerica,* 656 P.2d at 823.

We now reach the same conclusion. Therefore, we hold that the household exclusion clause is in violation of I.C. § 49–

233 (1978). Consequently, the clause is unenforceable, and void as against public policy.

Were this Court to hold otherwise, the following inequities currently existing would continue:

(1) A family is making a trip on the freeway. If a negligently caused accident occurs *with the father at the wheel,* all family members in the household receive no compensation from the liability insurance policy, even if they are seriously injured or paralyzed for life. However, the *friends* and *relatives* of the family riding in the *same* car will be compensated for their injuries by the father's policy. They fall outside the household exclusion clause.

(2) If a son just home from college (and therefore outside the exclusion clause) takes the wheel at a rest stop, *everyone* is immediately cloaked with coverage; but if the mother or sister trade with him when they stop for gas, the coverage is suddenly no longer in force.

(3) When the family friend riding with them slips behind the wheel, the liability coverage reappears.

(4) The neighbor next door could be driving behind the first family's car with the children of the two families mingled between the cars, and both cars could be negligently involved in an automobile accident. In such a case, the insurance companies (with their household exclusion clauses) will compensate only those injured children or spouses who, by some quirk of fate, happened to climb into the car with an immediate family member *not* at the wheel.

These examples demonstrate the obvious: liability insurance protection for Idaho families fades in and out as family members move from car to car or switch from driver to driver.

The Washington Supreme Court unanimously voided household exclusion clauses, and in addressing the problem said:

This exclusion becomes particularly disturbing when viewed in light of the fact that this class of victims [the family] is the one most frequently exposed to the potential negligence of the named insured.

Typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings.

Consequently, there is no practical method by which the class of persons excluded from protection by this provision may conform their activities so as to avoid exposure to the risk of riding with someone who, as to them, is uninsured.

*Wiscomb,* 643 P.2d at 444.

The New Jersey Supreme Court has also spoken to the inequity of stripping family members of coverage but allowing it for everyone else:

... [T]here is something wanting in a system of justice which permits strangers, friends, relatives and emancipated children to recover for injuries suffered as a result of their driver's negligence but denies this right to the driver's spouse and minor children who are also passengers *in the same vehicle.*

*Immer v. Risko,* 267 A.2d 481, 488 (N.J. 1970) (emphasis added).

The supreme courts in the four states contiguous to Idaho which have considered the identical kind of intrafamily automobile negligence action have *unanimously* reached a result that disallowed the exclusion clause as it stood in the contract and lifted the intrafamily immunity to allow the suit. *Transamerica,* 656 P.2d at 823 (Montana); *Estate of Neal v. Farmers Insurance Exchange,* 93 Nev. 348, 566 P.2d 81, 83 (1977); *Wiscomb,* 643 P.2d at 466 (Washington); *Allstate,* 672 P.2d at 813–14 (Wyoming).

Two approaches in regard to the extent of recovery are followed in the majority of states which allow intrafamily actions in automobile negligence. *Hollister,* at 510–11. The first approach does not specifically limit recovery to the limits of the family's insurance policy. *Id.* When those state supreme courts applying this rule al-

lowed suit or voided the exclusion clause, they either neglected, or decided not, to limit recovery. The practical consequence is that the judgment could occasionally be substantially beyond the limits of the family's insurance policy.

■ The second approach, represented by the high court decisions of Oklahoma, Massachusetts and Delaware, limits any recovery to the extent of the automobile liability insurance policy. *Williams v. Williams*, 369 A.2d 669, 672 (Del.1976); *Sorensen v. Sorensen*, 369 Mass. 350, 339 N.E.2d 907, 909 (1975); *Unah*, 676 P.2d at 1370. We think this is the better approach, and therefore we adopt it. Therefore, we hold that intrafamily actions may be maintained in this narrow area, but only up to the limits of the automobile liability insurance policy.

In view of our holding above, we find it unnecessary to address the negligent entrustment of an automobile issue raised by the plaintiffs.

This decision shall be prospective in effect in a manner similar to the treatment utilized in *Thompson v. Hagan*, 96 Idaho 19, 25, 523 P.2d 1365, 1371 (1974) when the court had under consideration the constitutionality of the automobile guest statute. Accordingly the decision shall be applicable to this action, all actions pending as of December 31, 1984, and all actions arising subsequent to that date.

Reversed and remanded for further proceedings consistent herewith. Costs to appellants.

BISTLINE, J. and HARGRAVES, J. Pro Tem., concur.[2]

SHEPARD, Justice, dissenting:

I joined the dissent of Justice Bakes to the 1984 Opinion No. 176. I continue to adhere to that position, that dissent reading as follows:

I see this case as a continuation of this Court's inconsistency in dealing with common law intra-family immunity. The majority correctly reasons that:

"If there is intra-family immunity in Idaho in the context of automobile accidents, then the household exclusion clauses are valid. If there is no intra-family immunity shield, the household exclusion clauses are invalid statutorily and as against public policy." *Ante* at 552.

This is true because there would be no "liability imposed by law," I.C. § 49–233, which must be insured against if the common law of Idaho does not "impose" liability for negligence as between family members. If the common law in Idaho does not "impose" liability for negligence as between family members, then the household exclusion clause is not contrary to Idaho's statute mandating liability insurance for motor vehicles. Therefore, the resolution of this case depends entirely on whether common law parent-child immunity exists under Idaho law.

Prior to 1975 the common law doctrine of intra-family immunity was the law in Idaho, not that it was specifically adopted by a prior Idaho case, but the immunity was part of the general common law. This implication is found in *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1975), which refused the "*retention* of interspousal immunity," *id.* at 17, 539 P.2d 566 and phrased the opinion as "*abrogating* the doctrine of interspousal immunity," *id.* at 25, 539 P.2d 566 (emphasis added). I dissented from *Rogers* because I considered the public policies underlying intra-family immunity to have continued validity. I also suspected that this Court's abrogation was based partly upon the fact that liability insurance was present. Next came the case of *Pedigo v. Rowley*, 101 Idaho 201, 610 P.2d 560 (1980), which upheld intra-family immunity between a parent and child for an action of negligent supervision. I dissented from *Pedigo* because of its inconsistency with the prior precedent of *Rogers*. The public policy and arguments

---

**2.** District Judge George Hargraves sat in the place of Justice Bakes on the second rehearing of this case. The dissent of Justice Bakes was joined by Shepard, J. who continues to adhere to that dissent.

underlying interspousal immunity are the same as the public policy underlying parental immunity. If the law does not recognize those policies and arguments in interspousal immunity, then the same should not have been recognized in parent-child immunity. The special concurrence of Chief Justice Donaldson in *Pedigo* attempted to counter the dissent by drawing a distinction between the spousal and parental relationships. However, no mention is made of that distinction in today's opinion which discusses both spousal and parental immunities as one "inter-family immunity," apparently conceding that the underlying policies are the same.

In *Pedigo,* there was no liability insurance involved as far as the record discloses. Now comes this case, in which liability insurance is behind the alleged tortfeasor (brother of the victim), and the Court conveniently finds no immunity, as it did in *Rogers.* There is some authority supporting the result reached in the majority opinion. Most of those cases, which abrogate household exclusions in liability policies, do so in a straightforward manner by abolishing the doctrine of parental-child immunity. However, statements in the majority opinion such as:

"The last exception (now recognized in many states) allows intra-family suits in automobile negligence actions where *liability insurance is present.*" (Emphasis added), *ante* at 551, "[Intra-family immunity] will not apply ... to *shield insurance companies* in automobile negligence actions." (Emphasis added), *ante* at 551,

"But today, the presence of mandatory automobile *liability insurance* completely undercuts that rationale in this area." (Emphasis added), *ante* at 552,

reveal the true basis for the majority's opinion—that is, the defendant is covered by liability insurance, so there is no immunity. This conclusion is further supported by the fact that the majority opens the immunity door only "to the extent of coverage under the automobile liability insurance." *Ante* at 552.

"Viewed in this way, the majority opinion appears for what it really is, a thinly disguised assault upon liability insurance carriers." *Rogers v. Yellowstone Park Co.,* 97 Idaho 14, 25, 539 P.2d 566, 577 (1974) (Bakes, J., dissenting). At least the Montana Supreme Court, in *Transamerica Insurance Co. v. Royal,* 656 P.2d 820 (Mont.1983), the case upon which we based our decision to grant rehearing, as the majority notes *ante* at 551, made its decision on a more judicious rationale than the presence of a "deep pocket." The Montana court recognized that the validity of the policy exclusion turned upon the question of whether or not Montana recognized the doctrine of parental immunity, not the reverse—that parental immunity turned upon whether or not there was insurance. The Montana court succinctly stated:

"If we recognize parental immunity, then the exclusion clause is valid; and *vice versa,* if parent-child immunity does not exist, then the exclusion clause must be invalid...."

The Montana court then concluded:

"We hold that a parent is not immune from suit brought by his child under the age of emancipation in cases involving parental negligence in the operation of a motor vehicle. Consequently, we must hold that a family exclusion clause is void and unenforceable [under Montana's equivalent of I.C. § 49–233]." 656 P.2d at 824.

We should not let the existence or non-existence of liability insurance determine whether there is parent-child immunity in Idaho. Therefore, I respectfully dissent.

The majority gives several examples of "inequities" which might occur when certain passengers are not covered by liability insurance, depending upon whether a household member is driving the automobile. These perceived inequities are present in every accident involving uninsured or under-insured motorists, and they would be substantially lessened by the presence of automobile medical coverage for the family members which is quite often purchased with the liability coverage.

This coverage is further supplemented by major medical health and accident coverage which many heads of households obtain through employment or from another source. The majority's implication that, unless the household exclusion clause is voided the family members will be stripped of all coverage, is not correct.

The law does not require households to insure for all injuries to its members. Until the law does so require, the basic inequities referred to by the majority will continue to exist. If insurance is purchased for a specific situation, the member will be covered; if not purchased, there will be no coverage. The presence or absence of insurance coverage should not bear on whether intra-family immunity should be applied by this Court.

The majority interprets I.C. § 49–233, which requires the owner to insure against injury suffered "by any person" so broadly that most exclusions, including the household exclusion, are contrary to the statute. The insurance policy in the present case contains other exclusions disallowing liability coverage to: anyone injured intentionally by the owner or driver; employees or fellow servants in certain situations; partners of the insured; those injured while the automobile is used in the "automobile business"; and those injured while the automobile is used in a "racing or speed contest or in any practice or preparation thereof." All of these people who might be injured would qualify as "any person" under the majority's interpretation. Additionally, there would be no common law immunity to bar liability being "imposed by law." Therefore, most, if not all, of the exclusions contained in the insurance policy could be voided using the same analysis by which the majority voids the household exclusion clause. The legislature was undoubtedly aware of these common exclusions, including the household exclusion, at the time compulsory liability insurance was required by statute. There is nothing in the legislative history or the statute itself which suggests that the legislature intended such a drastic result as the voiding of these policy exclusions. Many of the exclusions have been accepted by long use and are supported by rational reasons. They may all have been swept away by the majority opinion today.

The majority has another problem with its statutory construction. The statute in question only mandates liability insurance in the amount of $25,000 for a single accident and $50,000 for multiple claims. Even if the household exclusion clause is to be abrogated because it conflicts with the statute, it should only be abrogated to the extent of the first $25,000–50,000 of coverage. The act specifically states, in I.C. § 49–1521(g), that:

"(g) Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy *and such excess or additional coverage shall not be subject to the provisions of this act.* With respect to a policy which grants such excess of additional coverage the terms 'motor vehicle policy' shall apply only to that part of the coverage which is required by this section." (Emphasis added.)

The additional coverage beyond the $25,000–50,000 coverage is not "subject to the provisions of [the] act," and therefore the household exclusion cannot be construed as inconsistent with the coverage beyond the $25,000–50,000 statutory requirement. The additional coverage ought to be subject to the policy exclusions, and many cases so hold. *See Arceneaux v. State Farm Mutual Automobile Ins. Co.,* 113 Ariz. 216, 550 P.2d 87 (1976); *DeWitt v. Young,* 229 Kan. 474, 625 P.2d 478 (1981); *State Farm Mutual Auto Ins. Co. v. Shelly,* 394 Mich. 448, 231 N.W.2d 641 (1975); *Estate of Neal v. Farmers Ins. Exchange,* 93 Nev. 348, 566 P.2d 81 (1977).

The enforcement of a household exclusion clause in other insurance contexts is now questionable as a result of today's opinion. Consider the household exclusion clause contained in a homeowner's liability insurance policy. The arguments and pub-

lic policy are the same. The so-called inequities are the same. Consider the two neighborhood children who alternately play at each other's houses. By enforcing the clause, each will fall in and out of coverage, depending on whether he or she is playing at the neighbor's house or at home. That is not such a compelling inequity upon which basis the clause must be voided. The liability policy was purchased in order to insure against injuries to others who are not members of the family. If the head of the household wants coverage for his own family members, then that particular first party coverage should be purchased in addition to liability coverage.

The two policies supporting intra-family immunity are: (1) preservation of family harmony; and (2) prevention of collusion or fraud. The majority claims that the second policy was "disposed" of in *Rogers*, even though it was recognized subsequently in *Pedigo*. The majority eliminates the first policy by stating, "But today, the presence of mandatory automobile liability insurance completely undercuts the rationale in this area." *Ante* at 552. The reason family members are less likely to experience disharmony over the lawsuit is that they will be more likely to agree on liability. A parent is more likely to admit to negligence, whether or not it is true, when the insurance coverage of the parent's child is involved. This enhances the policy that intra-family immunity should be recognized in insurance cases to deter fraud and collusion.

There will no doubt be innumerable legal and practical problems raised by today's decision to which the majority has obviously given little or no thought. For example, if as the majority indicates, parent-child immunity is abrogated only "to the extent of coverage under the automobile liability insurance," then every such action filed by a parent against a child or a child against a parent must first allege and prove the presence of insurance in order to maintain the action. This will inevitably require the joinder of the insurance company in the action and, if coverage is contested, a trial on that issue as a predicate for maintaining the parent-child action. Another example is the parent who is negligently supervising a small child in an automobile by not insisting that the child be restrained in a seatbelt. The parent stops abruptly, attempting to avoid hitting a car ahead, and the unrestrained child is thrown into the windshield and is seriously injured. If the child sues the parent, what would the majority's decision be? The majority has recognized the validity of *Pedigo* which would bar the child from suing the parent for negligent supervision because of failure to properly supervise and restrain the child. However, if the parent merely "admits" following too closely to another vehicle, then that type of negligence would not fall under the *Pedigo* negligent supervision doctrine which retains parent-child immunity, and the child could bring a lawsuit against the parent for following another vehicle too closely if the parent carried liability insurance.[3] In this second example, under today's opinion it would appear that the trial court would have to litigate the question of how much of the injured child's damages were the result of the immune negligent supervision (failure to restrain), and how much of the damages were sustained by the non-immune negligent driving (following too closely). Also, what will happen if the judgment of the child against the parent exceeds the amount of the liability insurance coverage? Since the parents cannot be the guardians *ad litem* for the injured child, because of the obvious conflict of interest, any guardian of a child who recovers an amount in excess of the parents' liability insurance would of necessity have to carry out its fiduciary responsibility to the injured child and execute against the assets of the parents. To-

---

**3.** In order for a parent to recover under the liability policy, all that will be necessary is to "admit" that the cause of the accident was the following too closely, rather than the failure to restrain the child, and the liability of the insurance carrier will be fixed. It is difficult to understand how the majority can so lightly conclude that the prevention of collusion or fraud was "disposed of" in *Rogers*.

day's opinion is inconsistent with *Pedigo*. This Court should follow the *Pedigo* case and establish some consistency in the law in this family immunity area.

The effect of the majority decision today is to transmute a policy of liability insurance into a policy of first party insurance not unlike the no-fault insurance concept which has been adopted in some states.[4] However, unlike no-fault insurance, the first party coverage created by the Court today permits recovery for pain and suffering and other similar types of damage which under no-fault are not compensable. Several years' experience under the no-fault insurance plans in those few states which have adopted it has resulted in sky-rocketing automobile insurance premiums, even though the no-fault coverage does not compensate for pain and suffering. One can only imagine what today's opinion will do to the liability insurance premium rates as a result of converting the standard liability insurance policy into a family no-fault policy, which will be the ultimate result of today's opinion. How can it rationally be contended that the legislature intended such a horrendous result by the mere enactment of I.C. § 49–233 and its requirement that all owners of automobiles operated in the state shall have a liability insurance policy in an amount not less than required by I.C. § 49–1521, *i.e.,* $25,000–50,000.

Today's opinion makes a shambles of the law of liability insurance and intra-family immunity. Whether intra-family immunity should be retained or abolished ought to be considered on its own merits, not upon its relationship to liability insurance. The problems which the majority opinion today will pose for the trial courts will yet prove the wisdom of the common law the doctrine of intra-family immunity.

DONALDSON, Chief Justice, concurring and dissenting.

I believe that the household exclusion policy provision is voided only to the extent

of the Motor Vehicle Safety Responsibility Act. The minimum required insurance limits for Idaho are $25,000/$50,000 under I.C. § 49–1521. Furthermore, I.C. § 49–1521(g) states that any insurance in excess of the mandated amount "shall not be subject to the provisions of this Act." It is apparent that the legislature did not wish to impair the obligation of contract for this and other exclusions except to the extent it violates the statutory requirements. *Dewitt v. Young,* 229 Kan. 474, 625 P.2d 478 (1981); *State Farm Mutual Automobile Insurance Co. v. Shelly,* 394 Mich. 448, 231 N.W.2d 641 (1975). The additional coverage was voluntary and not controlled by the provisions of the Act. Thus, the liability, if any, of the defendant for coverage in excess of that required by the Act should be judged according to the terms and conditions of the policy.

---

**4.** This is the second time in recent years that this Court has turned a liability insurance policy into a policy of first party insurance. *See Fore-* *most Ins. Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981).