## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 50441

JEREMY LANNINGHAM, an individual, and personal representative for the ESTATE OF JAY LANNINGHAM; JAMIE LANNINGHAM, an individual, and personal representative for the ESTATE OF JAY LANNINGHAM,

    Plaintiffs-Appellants,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY OF IDAHO, a corporation,

    Defendants-Respondents,

and

JOHN DOE CORPORATIONS I-X, unknown business entities,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, April 2024 Term

Opinion Filed: July 3, 2024

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Samuel A. Hoagland, District Judge.

The judgment of the district court is <u>affirmed</u>.

Hepworth Law Offices, Boise, for Appellants, Jeremy Lanningham; Jamie Lanningham; and Estate of Jay Lanningham. J. Grady Hepworth argued.

Hawley Troxell Ennis & Hawley LLP, Boise, for Respondent, Farm Bureau Mutual Insurance Company of Idaho. Benjamin C. Ritchie argued.

John E. Rumel and Erica S. Phillips for Amicus Idaho Trial Lawyers Association Foundation.

---

MEYER, Justice.

This case concerns an insurance company's denial of a claim for underinsured motorist (UIM) coverage by the adult heirs of Jay Lanningham. Lanningham died in a tragic car accident

caused by an underinsured motorist.[1] He had an insurance policy with Farm Bureau Mutual Insurance Company of Idaho that included UIM coverage (the Policy); however, Farm Bureau denied Jeremy's and Jamie's claim for UIM benefits for their father's wrongful death. On cross-motions for summary judgment, the district court granted Farm Bureau's motion, determining that Farm Bureau rightfully denied payment to Jamie and Jeremy because they did not qualify as insured persons under the Policy since they did not reside with Lanningham. We affirm the district court's judgment in favor of Farm Bureau.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed by the parties. On June 18, 2017, Lanningham was driving his Suburban near McCammon, Idaho. His fifteen-year-old granddaughter, Payton, was riding in the passenger seat with him. At the same time, a vehicle driven by fifteen-year-old Eric Neibaur was traveling toward Lanningham's vehicle. Neibaur failed to maintain his lane of travel and suddenly crossed the center lane, causing a head-on collision with Lanningham's vehicle. Lanningham, Neibaur, and Neibaur's passenger, his sister, were killed instantly. Payton survived the collision but was seriously injured.

After the accident, Neibaur's parents agreed to split their Liberty Mutual liability coverage policy limit of $100,000, which paid $50,000 to them, apparently pertaining to the death of their daughter, and $25,000 each to Lanningham's sons, Jamie and Jeremy. Lanningham's Farm Bureau policy included UIM coverage with limits of $100,000 per person and a maximum of $300,000 per occurrence. The Policy had various coverages, including Medical Payment Coverage and Collision Rollover Coverage. Lanningham was the only named insured on the Policy.

On Payton's behalf, Jamie and Jeremy submitted a UIM claim to Farm Bureau requesting the policy per person limit of $100,000. Jamie and Jeremy also each submitted personal UIM claims of $100,000 for their father's wrongful death. Subsequently, Farm Bureau sent a $100,000 check for Payton's UIM claim. Farm Bureau denied payment to Jamie and Jeremy for the wrongful death of Lanningham because they did not live with their father and therefore did not qualify as insureds under the terms of the Policy. After Farm Bureau denied Jamie's and Jeremy's personal claims, they submitted a claim in their capacity as personal representatives of Lanningham's Estate. They asserted that Lanningham was entitled to recover under the insurance contract and,

---

[1] Jay Lanningham will be referred to as Lanningham. Jeremy, Jamie, and Payton Lanningham will be referred to by their first names to avoid confusion. No disrespect is intended by doing so.

therefore, as Lanningham's heirs, Jamie and Jeremy succeeded to Lanningham's contract rights against Farm Bureau. Farm Bureau denied that claim as well.

Subsequently, Jamie and Jeremy filed this lawsuit against Farm Bureau seeking, first, a declaratory judgment "that the provisions and/or exclusions relied upon by Farm Bureau to deny underinsured motorist coverage to the Plaintiffs, to the extent such provisions and/or exclusions actually exist, violate the express public policy of the State of Idaho," and second, damages for breach of the insurance contract. Both parties filed motions for summary judgment. The parties stipulated to the underlying facts and agreed that the claims presented exclusively legal questions for the district court to resolve. After oral argument, the district court granted Farm Bureau's motion for summary judgment and denied the Estate's, as well as Jamie's and Jeremy's, motion for summary judgment.

Ruling in favor of Farm Bureau, the district court stated that Jamie and Jeremy are not "persons insured" under the policy:

> [Jamie and Jeremy] are in a far different situation than those insured persons the UIM statute is meant to protect. The language on which [Jamie and Jeremy] rely from Idaho Code § 41-2502(1) plainly applies to the protection of "persons insured." [Lanningham's] adult sons who do not reside with him are not "persons insured" under the Policy.

(Footnote omitted). The district court held that the Policy is consistent with the public policy of the state of Idaho as stated in Idaho Code section 41-2502 which governs underinsured motorist coverage:

> [Jamie and Jeremy] criticize [*Farm Bureau Mut. Ins. Co. of Idaho v. Eisenman*, 153 Idaho 549, 286 P.3d 185 (2012)] for not addressing the UIM requirements set forth in [s]ection 41-2502(1). However, the plain language of this statute parallels the language in the Farm Bureau Policy at issue in that and this case. Both limit the application and protection to "persons insured" under a policy "who are legally entitled to recover damages from owners or operators of uninsured and underinsured motor vehicles." I.C. § 41-2502(1).

Jamie and Jeremy timely appealed. The Idaho Trial Lawyers Association (the amicus) filed an amicus curiae brief in support of Jamie and Jeremy.

## II.   STANDARDS OF REVIEW

When this Court reviews a trial court's ruling on a motion for summary judgment, we apply the same standard used by the trial court originally ruling on the motion. *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017) (citation omitted). Pursuant to the Idaho Rules of Civil Procedure, a "court must grant summary judgment if the movant shows that

3

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *Krinitt*, 162 Idaho at 428–29, 398 P.3d at 161–62 (citation omitted). The standard of review does not change if the parties have filed cross-motions for summary judgment. *Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016) (citing *Shawver v. Huckleberry Est., L.L.C.*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004)). "This Court reviews questions of law de novo." *Farm Bureau Mut. Ins. Co. of Idaho v. Cook*, 163 Idaho 455, 458, 414 P.3d 1194, 1197 (2018) (italics omitted).

## III.    ANALYSIS

On appeal, Jamie's and Jeremy's position is twofold. First, as their father's heirs, they assert a claim for UIM benefits for Lanningham's wrongful death. Second, they assert that Lanningham was indisputably an insured, and as such, the Estate may step into Lanningham's shoes to collect UIM benefits for his wrongful death, just as Lanningham's heirs would against a third-party insured. Under either theory, their arguments lack merit.

### A.    The plain language of Lanningham's Policy precludes non-insureds from recovering UIM benefits.

"Insurance policies are contracts, and 'the parties' rights and remedies are primarily established within the four corners of the policy.'" *Andrae v. Idaho Cntys. Risk Mgmt. Program Underwriters*, 145 Idaho 33, 36, 175 P.3d 195, 198 (2007) (quoting *Featherston ex rel. Featherston v. Allstate Ins. Co.*, 125 Idaho 840, 843, 875 P.2d 937, 940 (1994)). Interpretation of an insurance contract is a question of law. *Fisher v. Garrison Prop. & Cas. Ins. Co.*, 162 Idaho 149, 153, 395 P.3d 368, 372 (2017). This Court applies the general rules of contract law when interpreting insurance policies subject to certain canons of construction. *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540, 66 P.3d 242, 244 (2003). This Court begins with the plain language of the insurance policy to determine whether there is an ambiguity. *Progressive Nw. Ins. Co. v. Lautenschlager*, 168 Idaho 841, 845, 488 P.3d 509, 513 (2021) (citation omitted). To determine whether an ambiguity exists, "the Court must construe the policy 'as a whole, not by an isolated phrase.'" *Id.* (quoting *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005)). "The language of an insurance policy 'is ambiguous if it is subject to conflicting but reasonable interpretations.'" *Id.* "If the language used is unambiguous, this Court gives effect to the plain and ordinary meaning of the words used in the policy." *Id.*

4

The parties do not argue that the UIM provision is unclear. Lanningham's Policy included UIM coverage of $100,000 per person with a maximum of $300,000 per occurrence. Coverage P-1 of the Policy, the UIM provision, states:

> We will pay damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured and caused by an occurrence. The owner's or operator's liability for these damages must arise from the ownership, maintenance, or use of the underinsured motor vehicle. [2]

"Underinsured motor vehicle" is defined in the Policy as

> a motor vehicle for which the sum of liability limits of all applicable liability bonds or policies at the time of an occurrence is less than the limits of this coverage. . . . For an occurrence involving two or more Insureds, this means the sum of all applicable per occurrence limits compared to the per occurrence limit of this coverage.

Neibaur's vehicle was insured with liability coverage limits of $50,000 per person and $100,000 per occurrence. Thus, Neibaur was an underinsured motorist from the standpoint of Lanningham's Policy. Farm Bureau does not dispute that Neibaur's vehicle was an underinsured motor vehicle. Under the Policy, "[b]odily injury means physical injury to a person and any resulting sickness, disease, or death." An "occurrence" is defined as "an accident arising out of the ownership, maintenance, or use of a motor vehicle[.]"

The Policy defines "insured" as follows:

1. Insured means:

   a. If you are a person, you and any relative, except a relative who owns a licensed motor vehicle not insured by this policy;

   b. Anyone occupying a nonowned vehicle while operated by you or your relative, except a relative who owns a licensed motor vehicle not insured by this policy; or

   c. Anyone occupying an insured vehicle.

A "relative" under the Policy is defined as "a person related to you by blood, marriage, or adoption, who is a *resident of your household*, including a ward or foster child." (Emphasis added). Lanningham was the only named insured on the Policy. As individuals, Jamie and Jeremy did not meet the definition of "insured" under the Policy because, although they were related to Lanningham by blood, they were not residents of Lanningham's household at the time of the accident.

---

[2] The emphases on defined words in the Policy are removed.

5

Farm Bureau paid the Policy's per person maximum of $100,000 for Payton's UIM claim. Payton met the definition of an "insured" under subsection (c) because she was an occupant of Lanningham's insured vehicle, the 2011 Chevrolet Suburban, during the accident and sustained physical injury.

The Policy specifically excludes persons who do not meet the definition of "insured" from recovering UIM damages, including damages for the wrongful death of an "insured":

> Persons not entitled to recovery. A person who is not an insured under Coverage P and P-1 is not entitled to recover damages under these coverages, including damages for wrongful death of an insured.

Under the plain language of the Policy, Jamie and Jeremy are not insureds, and their claim is expressly excluded. Thus, the district court's decision to grant summary judgment in favor of Farm Bureau on the breach of contract claim is affirmed.

**B.  The Policy does not run afoul of Idaho Code section 49-1212(12) which prohibits reduced liability coverage for family or household members.**

Jamie and Jeremy argue that Farm Bureau's Policy—to the extent it precludes their recovery for the wrongful death of the named insured—is tantamount to an impermissible family-member exclusion in violation of Idaho Code section 49-1212(12) and *Farmers Insurance Group v. Reed*, 109 Idaho 849, 712 P.2d 550 (1985). Farm Bureau counters that *Reed* and Idaho Code section 49-1212(12) are inapplicable to this case because both prohibit reduced or excluded liability coverage for household members *who would otherwise be covered* under an insurance policy *but for* their status as household members. We agree with Farm Bureau that the Policy does not run afoul of section 49-1212(12).

The district court held that the Policy was not contrary to Idaho Code section 49-1212(12) and *Reed*:

> Unlike in *Reed*, here, the exclusion of [Jamie and Jeremy] from recovering UIM wrongful death benefits is not contrary to any statute. Specifically, with respect to Idaho Code § 49-1212(12), the Supreme Court has interpreted the "clear intent" of that statute is "to prohibit step-down limits for household members and other authorized users under an insured's primary motor vehicle liability policy." *Farm Bureau Mut. Ins. Co. of Idaho v. Schrock*, 150 Idaho 817, 823, 252 P.3d 98, 104 (2011). The statute does not prohibit Farm Bureau from excluding certain family members as insureds as defined under the Policy. Instead, it prohibits Farm Bureau from limiting insurance (or providing a different amount of coverage) for an insured family member.

6

In *Reed*, the parents of a deceased passenger sued their son, seeking to recover insurance benefits for medical and funeral expenses and general damages after he had caused an accident that resulted in the death of his brother. 109 Idaho at 849–50, 712 P.2d at 550–51. The insurer sought to avoid liability coverage based on the household exclusion clause in the contract that insured the vehicle. *Id.* at 851, 712 P.2d at 552. The household exclusion clause excluded from coverage a claim for liability benefits by one insured against a family or household member co-insured. *Id.* At the time of the *Reed* decision, Idaho's Motor Vehicle Financial Responsibility Act provided:

> **49-233. Required Motor Vehicle Insurance.**—(a) Every owner of a motor vehicle which is registered and operated in Idaho by the owner or with his permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of motor vehicles . . . .

I.C. § 49-233(a) (1978) *redesignated as* I.C. § 49-1229(1). In measuring the household exclusion in *Reed* against the requirements of Idaho Code section 49-233, this Court stated:

> However, unlike the statute, the insurance contract contains a clause which *excludes* coverage for household members. This is in spite of the clear legislative mandate ordering coverage extended for damage, injury or death suffered "by any person." This type of exclusion in a liability insurance policy leaves completely unprotected those family members injured when another family or household member is at the wheel in a negligently caused automobile accident. Unless the [company] can show that something shields it from the statutory obligation "imposed by law" to pay damages caused by the policy holder to "any person," the household exclusion clause is flatly and unmistakably in violation of Idaho's compulsory insurance law.

*Reed*, 109 Idaho at 851, 712 P.2d at 552 (emphasis in original). This Court held that an automobile liability policy that excluded coverage for household members violated Idaho's compulsory liability insurance law, which required liability insurance against loss suffered by "any person" and was void as against public policy. *Id.* at 852–53, 712 P.2d at 553–54.

In 2007, the legislature amended Idaho Code section 49-1212 to add subsection (12), which provides that "[n]o motor vehicle liability policy providing coverage beyond state mandated minimum limits shall provide a reduced level of coverage to any insured's family or household member or other authorized user except as provided in section 41-2510, Idaho Code." I.C. § 49-1212(12); *see* Act of Mar. 30, 2007, ch. 307 § 1, 2007 Idaho Sess. Laws 859–60. Idaho Code section 49-1212(12) applies to motor vehicle *liability* insurance policies. *Schrock*, 150 Idaho at 823, 252 P.3d at 104. However, "[u]nderinsurance coverage . . . is in the nature of excess coverage.

It is not intended to be liability insurance." *Eastman v. Farmers Ins. Co.*, 164 Idaho 10, 15, 423 P.3d 431, 436 (2017) (citing *Horace Mann Ins. Co. v. Adkins*, 599 S.E.2d 720, 726 (W.Va. 2004)).

Jamie and Jeremy argue that Idaho Code section 49-1212(12) requires the Policy to cover the full amount they would otherwise be entitled to recover against Neibaur if the Neibaurs' vehicle were not underinsured. Jamie's and Jeremy's argument is unavailing because section 49-1212(12) addresses liability coverage, not underinsured motorist coverage. Their argument is also unavailing because section 49-1212(12) only prohibits the insurer from excluding coverage based on the claimant's status as a household member of the insured. Idaho law requires every owner or operator of an Idaho-registered motor vehicle to carry liability coverage so that if an insured is liable for causing the bodily injury or death of another person, or damage to another person's property from the maintenance or use of the motor vehicle, there will be coverage available for persons injured or damaged as a result. *See* I.C. § 49-1229. Section 49-1212(12) prohibits insurers from circumventing this requirement with a household exclusion that leaves household members without recourse to liability coverage benefits when a co-insured causes damage or injury.

The same rationale does not apply to underinsured motorist coverage, coverage which is not required to be carried by an owner or operator of a registered motor vehicle and which provides excess coverage as pointed out by this Court in *Eastman*. 164 Idaho at 15, 423 P.3d at 436. In short, Idaho Code section 49-1212(12) does not apply to underinsured motorist coverage, which is not compulsory.

**C.** ***Farm Bureau Mutual Insurance Company of Idaho v. Eisenman* controls and remains good law.**

The centerpiece of Jamie's and Jeremy's argument is that *Eisenman*, 153 Idaho 549, 286 P.3d 185, is not controlling or applicable to this case. In the alternative, they argue that *Eisenman* was wrongly decided and should be overturned. Farm Bureau maintains that the present case is "on all fours" with *Eisenman*, compels the dismissal of their claims, and therefore this Court may affirm the district court on this basis alone.

In *Eisenman*, the adult children of an insured sought to recover the limits of their mother's UIM coverage after she was struck and killed by a drunk driver while crossing the street. 153 Idaho at 551–52, 286 P.3d at 187–88. Farm Bureau denied the adult children's UIM claims for wrongful death damages because they were not "insureds" under the mother's insurance policy. *Id.* at 552, 286 P.3d at 188. Farm Bureau filed a declaratory judgment action and asked the court to declare that the heirs and the estate were not covered by the policy and were not eligible to receive UIM

8

payments under the UIM coverage. *Id.* The estate and heirs filed a counterclaim against Farm Bureau for breach of contract. *Id.* The district court found in favor of the estate and the heirs, but Farm Bureau appealed. *Id.*

On appeal, the estate argued that it held "all contract rights the decedent held before her death and that it is legally entitled to recover damages for [their mother's] death under Idaho's wrongful death statute, Idaho Code § 5-311." *Id.* at 553, 286 P.3d at 189. The estate argued that, as a result, it was entitled to payment of wrongful death damages under the UIM provision in the mother's policy that provided Farm Bureau "will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** sustained by an **insured**," *id.* at 554, 286 P.3d at 190 (emphasis in original), and "caused by an occurrence," *id.* at 555, 286 P.3d at 191 (Jones, J., concurring). The *Eisenman* Court clarified that a decedent's estate, or the estate's personal representative, cannot independently file a wrongful death claim, under Idaho Code section 5-311, because although the estate steps into the shoes of the deceased person to administer the estate, the estate can only bring claims on behalf of the deceased that were *valid during his or her lifetime*. *See id.* at 553–54, 286 P.3d at 189–90 (majority opinion). Therefore, an estate is not legally entitled to recover damages for the deceased's wrongful death because the cause of action is entirely new and distinct from any action that the deceased may have brought before his or her death. *Id.*

However, the *Eisenman* Court reiterated that even though the estate or personal representative cannot pursue a wrongful death claim for the benefit of the estate, the estate can still file a wrongful death claim on behalf of the heirs because the personal representative's role in wrongful death actions is only to act as a trustee for the heirs. *Id.* Therefore, only two parties may bring a claim for wrongful death under Idaho Code section 5-311, the decedent's heirs and the decedent's personal representative on behalf of the heirs. This Court reversed the district court's decision and concluded that the mother's UIM coverage did not extend to the heirs (who were not "insureds" under the policy) simply because the estate could bring a wrongful death action on behalf of the heirs. *Id.* at 554–55, 286 P.3d at 190–91.

With the holding in *Eisenman* in mind, we now address Jamie's and Jeremy's arguments in turn. Jamie and Jeremy, along with the amicus, assert that *Eisenman* is inapplicable to this case for several reasons. First, they argue that *Eisenman* applied the Idaho law that existed prior to the 2008 legislative mandate for UIM policies, which they assert provide coverage for wrongful death.

9

Second, they argue that the Idaho Legislature expressly expanded the remedies available to Idaho's insured motorists to include UIM coverage for "death" when the legislature added the word "death" to the statute. Third, they argue that legal precedent after the 2008 amendment established that insurance policy provisions that define away or exclude certain types of coverage, like the provision in Lanningham's Policy, are void on public policy grounds.

"Whether an insurance contract violates public policy presents a question of law for this Court to resolve." *Pena v. Viking Ins. Co. of Wis.*, 169 Idaho 730, 734, 503 P. 3d 201, 205 (2022) (citing *Eastman*, 164 Idaho at 14, 423 P.3d at 435). Before 2008, no Idaho statute required automobile insurers to include, or even to offer, UIM coverage in its policies. *Wood v. Farmers Ins. Co. of Idaho*, 166 Idaho 43, 45, 454 P.3d 1126, 1128 (2019). In 2008, the Idaho Legislature amended section 41-2502 to require automobile insurers to offer underinsured motorist coverage with limits of at least $25,000 when selling liability policies. *Pena*, 169 Idaho at 734, 503 P.3d at 205 (citing *Wood*, 166 Idaho at 45, 454 P.3d at 1128); *see* Act of Mar. 5, 2008, ch. 69 § 1, 2008 Idaho Sess. Laws 183). Idaho Code section 41-2502 provides:

> (1) Except as otherwise provided in subsection (2) of this section, no owner's or operator's policy of motor vehicle liability insurance that is subject to the requirements of section 49-1212(1) or (2), Idaho Code, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as set forth in section 49-117, Idaho Code, as amended from time to time, under provisions approved by the director of the department of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured and underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

> (2) A named insured shall have the right to reject either or both uninsured motorist coverage or underinsured motorist coverage, which rejection must be in writing or in an electronic record as authorized by the uniform electronic transactions act, chapter 50, title 28, Idaho Code, and such rejection shall be effective as to all other insureds and named insureds; and after which such rejected coverage need not be provided in or supplemental to a renewal or replacement policy issued by the same insurer or an affiliate of that insurer.

> (3) Prior to the issuance of any new policy or the first renewal or replacement of any existing policy of motor vehicle liability insurance with an effective date on or after January 1, 2009, a named insured shall be provided a standard statement approved by the director of the department of insurance, explaining in summary form, both uninsured and underinsured motorist coverage, and the different forms of underinsured motorist coverage that might be available from insurers in Idaho.

(4) The provisions of this section shall not apply to policies of motor vehicle liability insurance for coverage on all-terrain vehicles, utility type vehicles, specialty off-highway vehicles or motorbikes as those terms are defined in section 67-7101, Idaho Code.

I.C. § 41-2502.

Contrary to Jamie's and Jeremy's first argument, Idaho Code section 41-2502 does not mandate that insurance companies provide UIM coverage. The 2008 amendment only required insurance companies to offer underinsured motorist coverage along with uninsured motorist coverage. Uninsured and underinsured motorist coverage are unlike compulsory liability coverage that every owner or operator of an Idaho-registered motor vehicle is required to carry. *See* I.C. § 49-1212. Uninsured and underinsured motorist coverage is excess coverage. *See Eastman*, 164 Idaho at 15, 423 P.3d at 436 (citation omitted). Idaho Code section 41-2502(2) permits the policyholder to reject either or both the uninsured and underinsured motorist coverages in writing.

Furthermore, the plain language of Idaho code section 41-2502(1), which Jamie and Jeremy overlook, only requires that uninsured and underinsured motorist coverages be offered for the protection of the persons "insured thereunder." The phrase "*no owner's or operator's policy* of motor vehicle liability insurance [shall be delivered without coverage] for the protection of persons *insured thereunder*" contemplates protection for persons insured under a particular insurance policy. The statute affords UIM protection to those persons who are defined as insured persons. Jamie and Jeremy are not persons insured under the Policy, nor are they defined as insured under the Policy.

Jamie's and Jeremy's second argument is also unpersuasive because the word "death" was not a new addition to the pre-2008 version of the statute. In 2008, the legislature added UIM coverage to an already existing uninsured motorist coverage statute which already included the word death in the phrase "in limits for bodily injury or death":

> 41-2502. UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGE FOR AUTOMOBILE INSURANCE. (1) Except as otherwise provided in subsection (2) of this section, nNo owner's or operator's policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle of motor vehicle liability insurance that is subject to the requirements of section 49-1212(1) or (2), Idaho Code, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as set forth in section 49-117, Idaho Code, as amended from time to time, under provisions approved by the director of the

11

department of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured <u>and underinsured</u> motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

(2) ~~The~~ <u>A</u> named insured shall have the right to reject ~~such~~ <u>either or both uninsured motorist coverage or underinsured motorist</u> coverage, which rejection must be in writing <u>or in an electronic record as authorized by the uniform electronic transactions act, chapter 50, title 28, Idaho Code, and such rejection shall be effective as to all other insureds and named insureds;</u> and ~~provide further~~ <u>after which</u> such <u>rejected</u> coverage need not be provided in or supplemental to a renewal or replacement policy ~~where the named insured had rejected the coverage in connection with a policy previously~~ issued ~~to him~~ by the same insurer <u>or an affiliate of that insurer.</u>

(3) <u>Prior to the issuance of any new policy or the first renewal or replacement of any existing policy of motor vehicle liability insurance with an effective date on or after January 1, 2009, a named insured shall be provided a standard statement approved by the director of the department of insurance, explaining in summary form, both uninsured and underinsured motorist coverage, and the different forms of underinsured motorist coverage that might be available from insurers in Idaho.</u>

Act of Mar. 5, 2008, ch. 69 § 1, 2008 Idaho Sess. Laws 183–84 (strikethrough indicates deleted text) (underlined indicates added text). The legislative history reflects that coverage for death was not newly added to subsection (1) in 2008. It already existed in the previous version of section 41-2502 relating to uninsured motorist coverage.

Excluding heirs from recovering UIM benefits because they do not meet the definition of "insured" does not turn subsection (1) into a legal and practical nullity as Jamie and Jeremy contend. Under *Eisenman*, we noted that a decedent's claim for wrongful death abates upon death, so the decedent's estate cannot collect UIM benefits for the decedent's wrongful death. 153 Idaho at 553–54, 286 P.3d at 189–90. We take this opportunity to point out that this Court's statement in *Eisenman* that a decedent's wrongful death cause of action abates on the decedent's death, is inaccurately worded. The wrongful death cause of action is statutory and only *arises* upon the decedent's wrongful death. It belongs to the decedent's heirs under Idaho Code section 5-311. The decedent never had a wrongful death cause of action; thus, there is no wrongful death cause of action belonging to the decedent that abated on the decedent's death. The analysis in *Eisenman* is nevertheless correct: the decedent's estate does not acquire a wrongful death cause of action upon the decedent's death.

Here, persons insured under the Policy can collect UIM benefits for a decedent's wrongful death if they are the decedent's heirs and reside in the decedent's household. If Lanningham were survived by a relative, for example his wife or a minor child residing in his household at the time of the collision (and who did not own a motor vehicle not insured by the Policy), that relative would be considered an insured under the Policy and could submit a claim for UIM benefits for Lanningham's wrongful death to the extent the tortfeasor's liability policy limits were insufficient. The UIM provision is not rendered void simply because Jamie and Jeremy, adult heirs who reside outside Lanningham's household, do not qualify as insureds under the Policy.

Jamie's and Jeremy's third argument seems to suggest that Idaho Code section 41-2502(1) broadened the meaning of "insured" to include a decedent's heirs by requiring insurers to offer UIM coverage for wrongful death. Citing to *Hill v. American Family Mutual Insurance Co.*, 150 Idaho 619, 249 P.3d 812 (2011), *Eastman*, 164 Idaho 10, 423 P.3d 431, and *Pena*, 169 Idaho 730, 503 P.3d 201, the amicus advances Jamie's and Jeremy's argument and contends that insurance policy provisions that define away or exclude certain types of coverage, like the provision in Lanningham's Policy, are void on public policy grounds. However, the public policy considerations that led the Court to hold that the provisions at issue in *Hill*, *Eastman*, and *Pena* were contrary to public policy do not lead to the same result when applied to this case. The cases relied on by Jamie, Jeremy, and the amicus all invalidated UIM provisions that prevented recovery by a surviving *insured*. These cases do not support broadening the definition of *insured* to include relatives who do not reside with the insured. *See Hill*, 150 Idaho at 627–30, 249 P.3d at 820–23 (exhaustion clause in insurance policy was void under public policy because it prevented insured person from obtaining a legitimate claim); *Eastman*, 164 Idaho at 15, 423 P.3d at 436 (non-owned vehicle exclusion in insurance policy was void under public policy considerations as the exclusion prevented insured person from collecting a legitimate claim); and *Pena*, 169 Idaho at 738–39, 503 P.3d at 209–10 (offset provision in insurance policy created illusory coverage and prevented insured person from receiving the full benefit of the policy).

Having determined that the 2008 amendment and the subsequent case law interpreting Idaho Code section 41-2502 do not produce a result different from *Eisenman*, we now turn to the merits of Jamie's and Jeremy's argument that *Eisenman* should be overruled. "When there is controlling precedent on questions of Idaho law 'the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless

13

overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.'" *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)).

As explained above, none of Jamie's, Jeremy's, or the amicus's arguments compel us to overturn *Eisenman. Eisenman* is controlling precedent in Idaho and the rule of stare decisis dictates that we follow it. In summary, Jamie and Jeremy as non-insured heirs cannot recover UIM benefits under the plain language of the Policy and Idaho Code section 41-2502. Lanningham's Estate cannot claim wrongful death benefits under the Policy's UIM provision pursuant to *Eisenman*.

**D.     Neither party is entitled to attorney fees on appeal.**

Jeremy and Jamie request attorney fees on appeal under Idaho Appellate Rule 41 and Idaho Code section 41-1839(1). Insureds cannot recover attorney fees under section 41-1839(1) if they are not entitled to payment for the claimed loss. *See* I.C. § 41-1839(1); *Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 464, 180 P.3d 498, 503 (2008). Because we affirm the district court's decision granting summary judgment in Farm Bureau's favor, Jeremy and Jamie are not entitled to payment under Lanningham's UIM coverage. Thus, they are not entitled to attorney fees on appeal.

Farm Bureau requests attorney fees in defending this appeal under Idaho Code section 12-121. This Court has previously held that section 12-121 is inapplicable in similar cases. *Greenwald v. W. Surety Co.*, 164 Idaho 929, 944, 436 P.3d 1278, 1293 (2019) ("Section 41-1839 provides that it and 'section 12-123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions or arbitrations between insureds and insurers involving disputes arising under policies of insurance.'"). As a result, awarding attorney fees under section 12-121 would be improper.

In addition, this Court does not award attorney fees under Idaho Code section 12-123 because that statute does not apply on appeal. *Horton v. Horton*, 171 Idaho 60, 78, 518 P.3d 359, 377 (2022) (citation omitted).  Idaho Code section 12-123 specifies that a party must file a motion requesting attorney fees for frivolous conduct and give notice for a hearing before the trial court. *See* I.C. § 12-123(2)(b). There is no provision for awarding attorney fees for the appellate process under Idaho Code section 12-123.

Finally, as the prevailing party on appeal, Farm Bureau is entitled to costs pursuant to Idaho Appellate Rule 40(a).

## IV.    CONCLUSION

We affirm the district court's judgment for the reasons stated herein. In doing so, we do not award attorney fees to either party on appeal. Farm Bureau is awarded its costs on appeal as the prevailing party.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.